Dennis K. MORRIS, Plaintiff,

v.

John McHUGH, Secretary Department of U.S. Army, Defendant.

Civ. No. 13–00182 ACK–KSC.

United States District Court, D. Hawai'i.

Signed Feb. 4, 2014.

Order Clarifying Denial of Reconsideration April 7, 2014.

Daphne E. Barbee, Honolulu, HI, for Plaintiff.

Thomas A. Helper, Office of the United States Attorney, Honolulu, HI, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

ALAN C. KAY, Senior District Judge.

### PROCEDURAL BACKGROUND

On April 23, 2013, Plaintiff Dennis Morris ("Plaintiff" or "Morris") filed a First Amended Complaint and Summons ("FAC"). ECF No. 4. In the FAC, Morris alleges Defendant John McHugh ("Defendant" or "Army") in his official capacity as United States Secretary of the Army discriminated against Morris on the basis of his age. FAC at 1, ¶ 1. Specifically, Plaintiff brings the following claims against Defendant: (1) violation of the Age Discrimination in Employment Act ("ADEA") and (2) violation of Plaintiff's due process rights under the 5th and 14th Amendments to the United States Constitution and under 5 U.S.C. § 7701(c)(2)(A). FAC at 24, ¶¶ 70–74.

Defendant filed the instant Motion to Dismiss or in the Alternative for Summary Judgment and Motion to Strike Jury Demand ("Motion" or "Def.'s Mot.") along with a Concise Statement of Facts ("Def.'s CSF'") on August 9, 2013. ECF Nos. 10–11. On August 13th, 2013, Defendant filed an Errata to correct the caption to the Motion and remove the portion titled "Motion to Strike Jury Demand." ECF No. 13. The caption was erroneous because Plaintiff's FAC does not contain a jury demand and Defendant's Motion does not contain an argument to strike a jury demand. *Id.* at 2. On August 21, 2013, Defendant's Motion was set for hearing on November 4, 2013. ECF No. 16. After two joint requests for continuances, the hearing was eventually moved to January 23, 2014. ECF Nos. 17, 19 & 23. On December 27, 2013, Plaintiff filed his Opposition to Defendant's Motion ("Pl.'s

Opp.") along with a Concise Statement of Facts ("Pl.'s CSF"). ECF Nos. 25–26. Defendant filed a reply ("Def.'s Reply") on January 9, 2014. ECF No. 31. This Court held a hearing regarding Defendant's Motion on January 23, 2014.

## FACTUAL BACKGROUND [1]

### A. Morris's Employment at Fort Shafter

Plaintiff was born on March 17, 1942, and is seventy-one years old. FAC at 2, ¶ 4. After retiring from the U.S. Army as a Lieutenant Colonel ("LTC") following 24 years of service, Plaintiff worked as a Supervisory Operations Officer with the Army at the Fort Shafter Police Station in Hawaii. Id. at 3, ¶ 6. Plaintiff served as an Operations Officer for over 16 years, from September 1991 to April 2008. Id. Plaintiff received excellent evaluations for his work and received a Commander's Award for civilian service. Id. ¶ 27.

As a Supervisory Operations Officer, Plaintiff was required under the National Security Personnel System ("NSPS") to rate subordinates and submit the ratings to a Pay Pool Panel ("Panel") for review. Def.'s CSF at 2, ¶ 3; Pl.'s CSF at 2, ¶ 3. In October and November 2007, Plaintiff completed annual performance appraisals for three subordinates under the NSPS. FAC at 3, ¶ 8. Plaintiff was required to rate the subordinates using a five-point scale with five being the highest rating and three considered an average rating. Id. ¶ 9. Plaintiff gave all three subordinates an overall rating of four. Id.

On November 9, 2007, the Panel evaluated Plaintiff's annual appraisal ratings for the three employees and determined that the ratings were unsubstantiated. Def.'s CSF Ex. 2 at 1. On November 13, 2007, Roy Brown, Acting Deputy Director of Emergency Services and Plaintiff's immediate supervisor, told Plaintiff that the Panel members wanted additional justification for the ratings or for Plaintiff to change the ratings to those recommended by the Panel. Id. When the Panel reconvened on November 15, 2007, no changes had been made to the ratings. Id. Brown spoke again with Plaintiff to discuss why the changes to the appraisal ratings had not been made. Id. After Plaintiff told Brown he was "firm in [his] decision and would not be making any changes," Brown explained to Plaintiff that under the United State Army Installation Management Command's ("IMCOM") NSPS Business Rules the rater was required to make the changes. Id.[2] Plaintiff reiterated that he would not make the changes and told Brown that he "wanted to see everything in writing so [he] could seek legal counsel prior to making a final decision." Id.

On November 16, 2007, LTC Michael Wallace, Director of Emergency Services and Plaintiff's second-level supervisor, spoke with Plaintiff and provided him with a copy of IMCOM's Pay Pool Business Rules. Id. After Brown directed Plaintiff to make the changes, Plaintiff told Brown and LTC Wallace that he "could not in good conscience make any changes to their appraisals." FAC at 7, ¶ 14. Plaintiff then explained to Brown and LTC Wallace that

---

**1.** The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

**2.** The Army claims NSPS Rules mandate that the rater make changes to the appraisal rat-

ings or be subject to disciplinary action, including transfer to a non-supervisory position. However, the Court notes that Defendant has not submitted an exhibit listing the relevant portion of the IMCOM's NSPS Business Rules.

the Panel members had the authority to make the changes themselves. *Id.* Brown and LTC Wallace again explained to Plaintiff that he had to comply with the Panel's orders. *Id.* ¶ 15. Plaintiff stated that he was "still thinking about it," but ultimately did not make any of the requested changes. Def.'s CSF Ex. 2 at 2. By November 21, 2007, no changes had been made to the appraisals. *Id.* Brown made the required changes to the appraisals and returned them to the Panel's administrator. *Id.*

Because Plaintiff did not comply with the Panel's directives about changing the performance appraisals, LTC Wallace relieved Plaintiff of his job and reassigned him to a nonsupervisory position at Wheeler Army Airfield. FAC at 8, ¶ 18; Def.'s CSF at 3, ¶ 9. On December 13, 2007, LTC Wallace delivered a memorandum titled "Subject: Notice of Directed Reassignment—Dennis Morris." FAC at 8, ¶ 18. Lieutenant Colonel Wallace told Plaintiff he was relieving him of his job as Supervisory Operations Officer and directed him to report to the non-supervisory job at Wheeler beginning on January 6, 2008. FAC at 8, ¶ 18; Def.'s CSF at 3, ¶ 10. Lieutenant Colonel Wallace explained his decision to reassign Plaintiff in the memorandum:

> Your demonstrated inability to follow supervisory standards negatively affected this entire organization. You deliberately refused to abide by written standards and repeated requests from your Chain of Command. You allowed your personal obstinacy to override your professional responsibilities causing irreparable damage to my trust in you as a supervisor.

Def.'s CSF Ex. 2 at 2, ¶ 2.

A week later, Plaintiff met with Colonel ("COL") Matthew Margotta, Commander of the U.S. Army Garrison–Hawaii and Bryson Jhung, Deputy to COL Margotta,

to object to his reassignment. FAC at 9, ¶ 21. On January 2, 2008, after reviewing the proposal, COL Margotta gave Plaintiff a written decision stating that Plaintiff would be reassigned. FAC at 10, ¶ 23; Def.'s CSF at 4, ¶ 11.

On January 7, 2008, Plaintiff sent a memorandum to Debra Zedalis, Director of the U.S. Army Installation Management Command Pacific Region. FAC at 12, ¶ 26; Def.'s CSF at 4, ¶ 12. In the memorandum, Plaintiff indicated that he was being treated unfairly and wrote the following:

> As a compromise offer to my being removed from my job, I will submit a formal written intent to retire to the civilian personnel office with a retirement date of April 30, 2008. I respectfully request that you allow me to remain as the Operations Officer of the Fort Shafter Military Police Station so I can retire with dignity from the job I have performed faithfully for the last 16 years.

FAC at 12, ¶ 27; Def.'s CSF at 4, ¶ 12.

Subsequently, the Army Command drafted a settlement agreement that Plaintiff signed on February 1, 2008. FAC at 12–13, ¶¶ 29–30; Def.'s CSF at 4, ¶ 12–13. Pursuant to the settlement agreement, Morris agreed to "resign" on April 26, 2008, in exchange for the "Agency agree[ing] to cancel the directed reassignment, and allow[ing] Morris to remain in his supervisory Operations Officer position until April 26, 2008." FAC at 13, ¶ 31; Def.'s CSF at 4–5, ¶¶ 14–15.

On March 14, 2008, Plaintiff submitted a memorandum to COL Margotta requesting that COL Margotta rescind the settlement agreement and allow him to remain in his position as Supervisory Operations Officer without retiring. Def.'s CSF at 5, ¶ 15 & Ex. 6. On April 5, 2008, COL Margotta emailed Morris and stated that he

-would adhere to the settlement agreement accepting Plaintiff's retirement effective April 26, 2008. FAC at 15, ¶¶ 40–41; Def.'s CSF at 5, ¶ 16. On April 26, 2008, the personnel office sent Plaintiff a "Notification of Personnel Action" indicating the nature of the action as "resignation." FAC at 20, ¶ 54; Def.'s CSF at 6, ¶ 17 & Ex. 16.

### B. Morris Requests Reassignment

Between the 5th and 8th of April 2008, Plaintiff sent letters complaining of age discrimination and unfair treatment to various elected officials and Army personnel. FAC at 42, ¶ 42. When COL Margotta learned that Plaintiff wrote to several U.S. Congressmen, he called Plaintiff into his office and indicated that he was upset about Plaintiff's letters. Id. at 16–17, ¶ 43.

A few weeks after meeting with COL Margotta, Plaintiff met with COL Howard Killian, Deputy Director of the U.S. Army Installation Management Command of the Pacific Region. Id. at 18, ¶ 46. Colonel Killian stated that Debra Zedalis, COL Killian's immediate supervisor, indicated to him that she did not believe an employee should lose his job for doing what Plaintiff had done. Id. Colonel Killian also told Plaintiff that he may be willing to allow Plaintiff to work in the Command but not in a supervisory position. Id.

Based on this conversation, Plaintiff called COL Margotta and asked him if he had a job for Plaintiff because he did not want to resign or be removed from employment with the Army. Id. at 19, ¶ 47. Colonel Margotta directed Plaintiff to contact LTC Thomas Denzler, Director of Emergency Services for the U.S. Army Garrison—Hawaii. Id. at 19, ¶ 48. On May 1, 2008, Plaintiff met with LTC Denzler who stated there was a GS–11 job available. Id. at 19, ¶¶ 49–50. Plaintiff told LTC Denzler that he wanted the GS–11 job. Id. On May 2, 2008, Joseph Roz-

miarek, Director of Civilian Personnel, sent an email to LTC Denzler advising him to send in a "Request for Personnel" action that requested Plaintiff be named for the job. Id. at 20, ¶ 52. Rozmiarek stated that the Civilian Personnel Advisory Center ("CPAC") would make the job offer to Plaintiff. Id. However, Plaintiff was neither contacted by the CPAC nor offered the job. Id. at 20, ¶ 53.

### C. Administrative Proceedings

On April 11, 2008, Plaintiff initiated an informal Equal Employment Opportunity ("EEO") complaint alleging discrimination on the basis of his age. Def.'s CSF at 6, ¶ 18; Pl.'s CSF at 3, ¶ 18. On May 16, 2008, Plaintiff filed a formal EEO complaint asserting age discrimination. Def.'s CSF at 6, ¶ 19 & Ex. 8; Pl.'s CSF at 3, ¶ 19. On June 15, 2008, Plaintiff filed a mixed case appeal with the Merit Systems Protection Board ("MSPB" or "Board") that was eventually dismissed without prejudice as premature. Def.'s CSF at 7, ¶ 20 & Ex. 10; Pl.'s CSF at 3, ¶ 20. On February 25, 2009, the Equal Employment Opportunity Commission ("EEOC") and Plaintiff agreed to dismiss the formal EEO complaint without prejudice and allow Plaintiff to re-file a mixed case appeal with the MSPB. Def.'s CSF at 7, ¶ 21 & Ex. 11; Pl.'s CSF at 3, ¶ 21. Plaintiff re-filed his mixed case appeal with the MSPB, but the MSPB dismissed his appeal because the agency lacked jurisdiction. Def.'s CSF at 7, ¶ 22 & Ex. 12; Pl.'s CSF at 3, ¶ 22. Specifically, the Board ruled that Plaintiff had "not alleged facts which, if proven, would show that his resignation was involuntary." FAC at 22, ¶ 64; Def.'s CSF at 7, ¶ 22 & Ex. 12.

Next, Plaintiff attempted to re-file his EEO complaint as a non-mixed case. Def.'s CSF at 7, ¶ 23 & Ex. 13; Pl.'s CSF at 4, ¶ 23. On September 21, 2012, the EEOC issued an order requiring the Army

to treat the EEO complaint as a "mixed case complaint" and issue a Final Agency Decision ("FAD"). *Id.* On November 8, 2012, the Army issued a FAD on Plaintiff's mixed case complaint finding that Plaintiff was not discriminated on the basis of his age and advising him that any administrative appeal lay with the MSPB. Def.'s CSF at 7–8, ¶ 24 & Ex. 14; Pl.'s CSF at 4, ¶ 24. Plaintiff then appealed the FAD to the MSPB, which dismissed for lack of jurisdiction. Def.'s CSF at 8, ¶ 25 & Ex. 15; Pl.'s CSF at 4, ¶ 25. Plaintiff filed the instant suit within 30 days of the initial MSPB decision becoming final. *Id.*

## *STANDARD*

### A. Subject Matter Jurisdiction

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. *Conservation Force v. Salazar,* 646 F.3d 1240, 1242 (9th Cir.2011). For a Rule 12(b)(6) motion

to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Sateriale v. R.J. Reynolds Tobacco Co.,* 697 F.3d 777, 783 (9th Cir.2012) (citation omitted). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In this case, Defendant has filed a motion to dismiss, or in the alternative, for summary judgment. Under Rule 12(d), "[i]f on a motion under Rule 12(b)(6) ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary under Rule 56." The parties must have "a reasonable opportunity to present all material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

Here, Defendant filed the instant Motion with a Concise Statement of Facts, which includes numerous exhibits. *See* ECF Nos. 10–11. Plaintiff filed its Opposition to Defendant's Motion with a Concise Statement of Facts, which included numerous exhibits to rebut Defendant's Concise Statement of Facts. *See* ECF Nos. 25–26. Because the parties have presented outside material in support of or in opposition to Plaintiff's ADEA claim and the Court is relying on those materials, the Court treats Defendant's Motion as to Plaintiff's ADEA claim "as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d); *Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996) ("A motion to dismiss made under the Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.")

However, the Court does not treat Defendant's Motion as to Plaintiff's due process claims as one for summary judgment. "A court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003). With respect to Plaintiff's due process claims, the Court only relies on three exhibits in Defendant's Concise Statement of Facts, Exhibits 10, 12 and 15. All three of the exhibits are written decisions by the MSPB. *See* Def.'s CSF Exs. 10, 12 & 15. Plaintiff refers extensively to the MSPB decisions in his FAC. *See* FAC at 21–24, ¶¶ 57, 61–65 & 68–69. The MSPB decisions are also public records and neither party questions their authenticity. Because the MSPB decisions are incorporated by reference in the FAC and matters of judicial notice, the Court is not required to convert Defendant's Motion with respect to Plaintiff's due process claims into a motion for summary judgment under Rule 56. *See* FAC at 22–24, ¶¶ 61–65, 68–69.

## C. Summary Judgment

A party may move for summary judgment on any claim or defense—or part of a claim or defense—under Federal Rule of Civil Procedure 56. Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Maxwell v. Cnty. of San Diego,* 697 F.3d 941, 947 (9th Cir.2012) (quoting Fed.R.Civ.P. 56(a)). Under Rule 56, a "party asserting that a

fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris,* 682 F.3d 1144, 1147 (9th Cir.2012). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (emphasis in original).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *United States v. Arango,* 670 F.3d 988, 992 (9th Cir.2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott,* 550 U.S. at 380, 127 S.Ct. 1769.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Avalos v. Baca,* 596 F.3d 583, 587 (9th Cir.2010).[3] If the moving party satisfies its burden, the

---

3. When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. *Miller v. Glenn Miller Prods.,* 454 F.3d 975,

987 (9th Cir.2006) (citation omitted). In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. *Id.* (citation omitted).

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Sluimer v. Verity, Inc.,* 606 F.3d 584, 587 (9th Cir.2010). The nonmoving party must present evidence of a "genuine issue for trial," Fed.R.Civ.P. 56(e), that is "significantly probative or more than merely colorable." *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1137 (9th Cir.2009). Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp. Med. Ctr.,* 630 F.3d 794, 798–99 (9th Cir.2010).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The court may not, however, weigh conflicting evidence or assess credibility. *In re Barboza,* 545 F.3d 702, 707 (9th Cir.2008).[4] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

## DISCUSSION

### I. Plaintiff's Due Process Claims Under the 5th and 14th Amendments to the U.S. Constitution and 5 U.S.C. § 7703

Defendant argues that Plaintiff's constitutional claims should be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. Def.'s Mot. at 2. Specifically, Defendant contends that Plaintiff cannot bring a *Bivens* claim against a government official in his official capacity and, moreover, such a claim is preempted by the ADEA. *Id.* at 2. Plaintiff argues that the Court has jurisdiction pursuant to 5 U.S.C. § 7703 because he is appealing a decision of the MSPB. Pl.'s Opp. at 6–8.

### A. Jurisdiction Under 5 U.S.C. § 7703

The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.,* creates "a framework for evaluating personnel actions against federal employees." *Kloeckner v. Solis,* —— U.S. ——, 133 S.Ct. 596, 600, 184 L.Ed.2d 433 (2012). The CSRA's "statutory framework provides graduated procedural protections depending on an action's severity." *Id.* If the action involves removal, a suspension for more than 14 days, a reduction in grade, a reduction in pay, or a furlough, the affected employee has a right to appeal the employing agency's decision to the MSPB. *Id.; see* 5 U.S.C. §§ 1204, 7512 & 7701. When an employee complains of a personnel action appealable to the MSPB and alleges that the action was based on discrimination, the employee is said to have brought a "mixed case." *Kloeckner,* 133 S.Ct. at 601; *see* 29 C.F.R. § 1614.302 (2012). The CSRA along with MSPB and EEOC regulations set out special proce-

---

**4.** Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. *F.T.C. v. Neovi, Inc.,* 604 F.3d 1150, 1159 (9th Cir.2010). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380, 127 S.Ct. 1769. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin,* 693 F.3d 1076, 1080 (9th Cir.2012).

dures to govern mixed cases. *Kloeckner,* 133 S.Ct. at 601.

■ "A federal employee bringing a mixed case may proceed in a variety of ways." *Id.* The employee may first file a discrimination complaint with the agency itself. *Id.; see* 5 C.F.R. § 1201.154 & 29 C.F.R. § 1614.302(b). If the agency rules against the employee, the employee may either take the matter to the MSPB or bypass further administrative review and file suit in district court. *Kloeckner,* 133 S.Ct. at 601; *see* 29 C.F.R. § 1614.302 (2012).

■ Alternatively, the employee may first bring his case directly to the MSPB and forgo the agency's own system for evaluating age discrimination charges. *Kloeckner,* 133 S.Ct. at 601; *see* 5 C.F.R. § 1201.154(a) & 29 C.F.R. § 1614.302(b). If the Board upholds the employer's personnel action, the employee can either request additional administrative process with the EEOC or seek judicial review. *Kloeckner,* 133 S.Ct. at 601; *see* 5 U.S.C. § 7702(a)(3), (b).

"Section 7703 of the CSRA governs judicial review of the MSPB's decisions." *Kloeckner,* 133 S.Ct. at 601. Section 7703(b)(1) provides the basic rule: "Except as provided in paragraph (2) of this subsection, a petition to review a ... final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit." Section 7703(b)(2) articulates the exception: "Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under [the enforcement sections of the Civil Rights Act, Age Discrimination in Employment Act, and Fair Labor Standards Act], as applicable." The enforcement provisions of every antidiscrimination statutes listed in § 7703(b)(2) authorizes suit in federal district court. *Kloeckner,* 133 S.Ct. at 601.

Section 7702(a)(1) clarifies the meaning of the phrase "cases of discrimination" referenced in § 7703(b)(2)'s exception:

[I]n the case of any employee or applicant for employment who—

(A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and

(B) alleges that a basis for the action was discrimination prohibited by [specified antidiscrimination statutes including the ADEA], the Board shall, within 120 days of filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures.

The "case of discrimination" referenced in § 7703(b)(2)'s exception are mixed cases, or cases that are appealable to the MSPB and allege discrimination. *Kloeckner,* 133 S.Ct. at 602. Accordingly, in a mixed case, jurisdiction generally lies with the federal district court. *Id.*

In *Kloeckner,* the Supreme Court held that a federal employee who claims that an agency action appealable to the MSPB violates a federal antidiscrimination statute listed in the CSRA should seek judicial review in district court, not in the Federal Circuit, when the MSPB decided the case on procedural grounds or on the merits. 133 S.Ct. at 607. The *Kloeckner* Court, however, did not explicitly address whether jurisdictional dismissals by the MSPB should go to the Federal Circuit or to a district court. *Conforto v. Merit Systems Protection Bd.,* 713 F.3d 1111, 1117 (Fed. Cir.2013). The Ninth Circuit has not yet addressed whether *Kloeckner* mandates that mixed cases dismissed by the MSPB solely on jurisdictional grounds should still go to a federal district court.

In *Conforto,* however, the Federal Circuit held that the "statutory text, the Court's rationale in *Kloeckner,* our own

prior decisions, and the decisions of other courts all indicate that an appeal from the Board's dismissal for lack of jurisdiction belongs in this Court." 713 F.3d at 1117. The Federal Circuit reasoned that because an employee may appeal to the MSPB "only if the employee's claim is within the Board's appellate jurisdiction, the plain import of this statutory language is that a purported mixed case appeal is reviewed by the district court only if the Board has jurisdiction to decide the appeal from the adverse action in issue." *Id.* at 1118. The Federal Circuit further concluded that because the employee's claim in *Kloeckner* was barred under a procedural rule, the Supreme Court "reversed only the line of authority holding that 'mixed cases' dismissed by the Board on procedural grounds were appealable to this court." *Id.* Indeed, the Supreme Court granted certiorari "to resolve a Circuit split on whether an employee seeking judicial review should proceed in the Federal Circuit or in a district court when the MSPB has dismissed her mixed case on procedural grounds." *Id.* (citing *Kloeckner*, 133 S.Ct. at 603). Accordingly, the Federal Circuit concluded that it had "jurisdiction to review a determination by the Board that it lacks statutory jurisdiction over an employee's appeal." *Id.* at 1116.

The Federal Circuit's holding comports with the line of pre-*Kloeckner* Ninth Circuit cases finding that an appeal from a MSPB dismissal of a mixed case for lack of jurisdiction belongs in the Federal Circuit.

*See, e.g., Sloan v. West,* 140 F.3d 1255, 1262 (9th Cir.1998) ("Given the plain language of the statute, we join our sister circuits and hold that appeals of MSPB jurisdictional decisions involving mixed claims are properly venued in the Federal Circuit Court of Appeals.").

Here, the MSPB dismissed Plaintiff's final mixed case appeal on jurisdictional grounds. *See* Def.'s CSF Ex. 15.[5] In his final appeal, Plaintiff argued that his "resignation" from the position of Supervisory Operations Officer was involuntary and added a claim for whistleblowing. *Id.* at 4. The Board applied the doctrine of collateral estoppel, or issue preclusion, and found that Plaintiff was precluded from relitigating the Board's prior decision. *See* Def.'s CSF Ex. 15 at 7. In the Board's prior decision, the Administrative Law Judge ("ALJ") found that Plaintiff failed to show that his "resignation" was involuntary and, therefore, was not an appealable action. *See* Def.'s CSF Ex. 12 at 14. Accordingly, the ALJ dismissed Plaintiff's mixed case appeal because the Board lacked jurisdiction. *Id.*[6]

Under 5 U.S.C. § 7702, a "mixed case" appealable to the district court under § 7703 is a case involving "an action that is *both* appealable to the MSPB *and* which allegedly involved discrimination." *Sloan,* 140 F.3d at 1261 (emphasis in original). Like *Conforto,* the Board determined that it lacked jurisdiction over Plaintiff's appeal because his decision to retire "was volun-

---

**5.** The Court notes that Plaintiff's first mixed case appeal with the MSPB was dismissed without prejudice as premature. Def.'s CSF at 7, ¶ 20 & Ex. 10. Specifically, the MSPB found that because Plaintiff filed a formal EEO complaint with the Army prior to filing with the Board, the Board's jurisdiction was delayed until either the agency issued a FAD or 120 days elapsed from the filing of the complaint. Def.'s CSF Ex. 10 at 2. Although the MSPB's first dismissal was arguably on procedural grounds, Plaintiff's due process

claims are predicated on the "final MSPB decision [which] was dated March 21, 2013." Pl.'s Opp. at 7. Moreover, Plaintiff declined to file a petition for review and did not seek judicial review of the first MSPB decision. Def.'s CSF Ex. 15 at 1.

**6.** The Board also found that Plaintiff "failed to meet his burden of nonfrivolously alleging jurisdiction" over his whistleblower claim. *See* Def.'s CSF Ex. 15 at 8.

tary and therefore did not constitute an 'adverse action' within the meaning of section 7512." *Conforto*, 713 F.3d at 1116.[7]

■ Because the Board did not have jurisdiction over the non-discrimination claim, Plaintiff's case is "not a 'mixed case' and any appeal of the jurisdictional determination must be filed in the Federal Circuit Court of Appeals." *Sloan*, 140 F.3d at 1261; *see Conforto*, 713 F.3d at 1118 ("It therefore follows that sections 7703(b)(1) and 7702(a)(1)(A) gives this court jurisdiction to review a Board determination that an employee's case is not appealable to the Board, regardless of whether the employee has sought to raise claims of agency discrimination."). Indeed, the MSPB notified Plaintiff that his right to judicial review of the Board's final decision lay with the Federal Circuit. *See* Def.'s CSF Ex. 15, at 12. Accordingly, this Court lacks jurisdiction to hear Plaintiff's appeal of the final MSPB decision pursuant to 5 U.S.C. § 7703 and, therefore, his due process claims are dismissed.

### B. Bivens Claim

In his FAC, Plaintiff alleges a violation of Plaintiff's due process rights under the 5th and 14th amendment to the U.S. Constitution. FAC at 24, ¶¶ 72–73. It is unclear on the face of the FAC whether Plaintiff is making a *Bivens*-style claim. *See* FAC at 24, ¶¶ 72–74. "*Bivens* created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities." *Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S.*, 482 F.3d 1157, 1173 (9th Cir.2007). "In a paradigmatic *Bivens* action, a plaintiff seeks to impose personal liability upon a federal official based on alleged constitutional infringements he or she committed against the plaintiff." *Id.*

■ Even assuming the Court has jurisdiction to hear Plaintiff's due process claims, the Court agrees with Defendant that a *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity. *Id.*[8] In his FAC, Plaintiff specifically filed suit against "Defendant in his official capacity as Secretary of the United States Department of the Army." FAC at 2, ¶ 1. To the extent Plaintiff relies on a *Bivens*-style claim the Court finds that a *Bivens* suit against a federal official "in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Consejo*, 482 F.3d at 1173.[9]

---

**7.** The Court recognizes that the MSPB decision does not discuss whether Plaintiff's reassignment constitutes an "adverse action." As discussed in Part II(C) of the "Discussion" section of this Order, the Court concludes that the reassignment was an adverse action. However, the only issue before the Board was whether Plaintiff's signing of the settlement agreement was voluntary. *See* Def.'s CSF Ex. 12, at 6 (stating that Plaintiff "filed a third petition for appeal with the Board, alleging that his April 26, 2008 separation by resignation was involuntary, which is the instant appeal before the Board"). The Board determined that the agreement was voluntary and dismissed Plaintiff's appeal for lack of jurisdiction. Def.'s CSF Ex. 12, at 14. Accordingly, any appeal of the Board's decision still lay with the Federal Circuit notwithstanding this Court's conclusion that the reassignment constitutes an adverse action.

**8.** Plaintiff's Opposition does not address Defendant's argument that a *Bivens* action cannot be maintained in this case. *See* Pl.'s Opp. at 6–8.

**9.** The Court also holds that the Fourteenth Amendment has no applicability in the instant matter because the provision does not apply to federal government actors. *Hall v. Mueller*, 84 Fed.Appx. 814 (9th Cir.2003). Rather, the "Fourteenth Amendment applies to actions by a State." *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987).

## C. ADEA Preemption

 It is well settled that the ADEA is the exclusive remedy for complaints alleging discrimination based upon age. *Ahlmeyer v. Nevada System of Higher Educ.*, 555 F.3d 1051, 1056 (9th Cir.2009). In *Ahlmeyer*, the Ninth Circuit held that the remedial scheme in the ADEA foreclosed § 1983 claims based on ADEA violations. *Id.* at 1054. The Court reasoned that the nature of the remedial provisions in the ADEA "demonstrate[d] Congressional intent to preclude the remedy of suits under § 1983." *Id.* at 1057 (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19–20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). The Court further reasoned that if a violation of substantive rights under the ADEA could be asserted via a § 1983 action, plaintiffs would be able to make an end run around the ADEA scheme's specific, complex procedural provisions. *Id.* (citing *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1366 (4th Cir.1989)). Accordingly, the *Ahlmeyer* Court held that the ADEA "precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983." *Ahlmeyer*, 555 F.3d at 1057.

Once again, it is unclear on the face of the FAC whether Plaintiff's due process claims allege age discrimination in employment. *See* FAC at 24, ¶¶ 72–74. Plaintiff's Opposition does not address Defendant's argument that the ADEA provides the exclusive remedy for a federal employee making a claim of age discrimination. *See* Pl.'s Opp. at 6–8. Even assuming the Court has jurisdiction to hear Plaintiff's due process claims, the Court finds that, to the extent Plaintiff asserts any age discrimination claims predicated on the U.S. Constitution, the ADEA's specific, complex procedural provisions provides the exclusive remedy for claims of age discrimina-tion. *Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir.2012).

For the foregoing reasons, the Court concludes that it lacks jurisdiction to hear Plaintiff's due process claims and, in the alternative, that Plaintiff has failed to establish a viable age discrimination claim under the U.S. Constitution. Accordingly, the Court GRANTS Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Failure to State a Claim Upon Which Relief Can Be Granted with respect to Plaintiff's due process claims under the Fifth and Fourteenth Amendment of the U.S. Constitution and 5 U.S.C. § 7703.

## II. Plaintiff's ADEA Claim

Defendant argues that Plaintiff's ADEA claim should be dismissed because: (1) Defendant's refusal to rescind the settlement agreement does not constitute an "adverse employment action" under the ADEA and (2) Plaintiff cannot, in the alternative, demonstrate that the proffered reasons for not allowing Plaintiff to rescind the settlement agreement were pretextual. Def.'s Mot. at 10. Plaintiff argues that his ADEA claim should not be dismissed because: (1) the settlement agreement violates the ADEA's waiver provisions and was not made knowingly and voluntarily; (2) there are disputed material issues of facts over whether Plaintiff suffered an adverse action; and (3) Defendant's proffered reasons for its employment actions are pretextual. Pl.'s Reply at 12–24.

### A. Exhaustion of Administrative Remedies

Preliminarily, Defendant argues that Plaintiff failed to exhaust his administrative remedies as to any age discrimination claims arising from his initial transfer to a nonsupervisory position and as to his

ADEA retaliation claim. Pl.'s Reply at 17–19.

Unlike Title VII of the Civil Rights Act, the ADEA "contains no express requirement that a federal employee complainant seek administrative relief, except that an employee who wishes to file suit without pursuing administrative remedies must give the EEOC notice of intent to sue at least 30 days before filing suit." *Bankston v. White*, 345 F.3d 768, 770 (9th Cir.2003) (internal citation omitted); *see also* 29 U.S.C. § 633a(d) (2002) (allowing an individual to file suit without filing an EEOC complaint but requiring notice to EEOC of intent to sue). "Federal law does, however, allow an employee the option of pursuing administrative remedies, either through the agency's EEO procedures, or through the Merit Systems Protection Board." *Bankston*, 345 F.3d at 770 (internal citation omitted). "EEOC regulations provide that an aggrieved federal employee who pursues the EEO avenue must consult an EEO counselor within forty-five days of the effective date of the contested personnel action, prior to filing a complaint alleging age discrimination." *Shelley v. Geren*, 666 F.3d 599, 605 (9th Cir.2012) (citing 29 C.F.R. § 1614.103, 1614.105(a)(1)). "[A]lthough the regulatory pre-filing exhaustion requirement at § 1614.105 does not carry the full weight of statutory authority and is not a jurisdictional perquisite for suit in federal court, ... failure to comply with this regulation [is] ... fatal to a federal employee's discrimination claim in federal court." *Id.*

▇▇▇ In this case, Plaintiff did not consult an EEO counselor within forty-five days of February 3, 2008, the effective date of the involuntary transfer.[10] However, incidents of discrimination not included in an EEOC charge may be considered by a federal court if "the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Id.* at 606. "In determining whether a new claim is like or reasonably related to the allegations contained in the previous charge, the court inquires into whether the original EEOC investigation would have encompassed the additional charges." *Id.* "The same is true of a complaint of discrimination submitted to a federal agency's EEO office." *Id.*

▇▇ Here, the settlement agreement was drafted in response to the Army's decision to reassign Plaintiff to a non-supervisory position and proposed that Plaintiff could remain in as Operations Officer if he retired on April 30, 2008. Thus, an EEOC investigation into the Army's decision for refusing to rescind the settlement agreement would necessarily have lead to an investigation over the Army's reasons for transferring Plaintiff out of his supervisory position. *Shelley*, 666 F.3d at 606. Indeed, the EEO Counselor's Report contains witness statements and references documents that discuss Plaintiff's

---

10. The Court notes that Plaintiff's formal EEO complaint did not directly allege that his involuntary transfer was based on impermissible age discrimination. *See* Pl.'s CSF Ex. 1 (Formal EEO Complaint). However, the EEO Counselor's Report contains statements by Plaintiff, COL Margotta and Director Zedalis that discuss Plaintiff's reassignment to a non-supervisory position. *See id.* (EEO Counselor's Report). In addition, Plaintiff's handwritten MSPB complaint explicitly discussed the reassignment. *Id.* (MSPB Mixed Case Appeal). Specifically, Plaintiff wrote: "I should not have been removed from my job because I could not as a matter of conscience change the performance appraisals of three civilian employees I rated. The punishment of removing me from a job I had performed successfully for 16 years was unfair, unjust, too severe and unnecessary." *Id.* at 3. Nevertheless, the EEO Counselor's Report and MSPB appeal were not filed within 45 days of the effective date of the involuntary transfer. Def.'s CSF at 4, ¶ 11.

reassignment, even though the Report does not contain a direct assertion that Plaintiff's reassignment was made on the basis of his age. *See* Pl.'s CSF Ex. 1 at 4–5 (EEO Counselor's Report). Accordingly, Plaintiff timely exhausted his available administrative remedies as to his ADEA claim over his initial transfer to a non-supervisory position.

Plaintiff's ADEA retaliation claim appears to be based on the filing of his initial complaint with the EEOC in April 2008 and sending of letters to various elected officials and Army personnel. *See* Pl.'s CSF Ex. 1; FAC at 16–17, ¶ 42–43.[11] Unlike the initial transfer claim, an EEOC investigation into the Army's refusal to revoke the settlement agreement would not necessarily have lead to an investigation into Plaintiff's retaliation claim. However, the Court finds that Plaintiff's ADEA retaliation claim should not be dismissed for failure to exhaust administrative remedies.

In *Bak,* a United States Postal Service Employee, Bak, filed race and age discrimination claims with the EEOC and pursued his race claim there, but abandoned his age discrimination claim during the administrative proceedings. *Bak v. Postal Service,* 52 F.3d 241, 242–43 (9th Cir.1995). After receiving a final decision from the EEOC, Bak filed an ADEA suit in federal district court. *Id.* at 242. Because Bak abandoned his age discrimination claim before the EEOC, the district court dismissed Bak's case for failure to exhaust administrative remedies. *Id.* at 243. On appeal, the Ninth Circuit reversed the district court's ruling and held

> that a claimant is no longer required to exhaust his administrative remedies with regard to an age discrimination

claim prior to filing a civil suit. The result of [29 C.F.R. § ] 1613.513, in effect at the time Bak filed his complaint, is to terminate any unexhausted administrative proceedings when a claimant files a civil suit. Similarly, an exhaustion requirement would terminate any civil suit filed. Thus, the joint effect of the amended regulations and exhaustion requirement would be to leave the claimant without any avenue of relief ... [A]n exhaustion requirement in this case would still prejudice Bak because he has no forum in which to bring his age discrimination claim: the time for filing another administrative complaint has expired, and an exhaustion requirement would preclude a civil suit. The primary goal of the exhaustion requirement is to prevent simultaneous proceedings regarding the same claim.

*Id.* at 244.

A "straight forward reading of *Bak* " leads the Court to avoid applying an exhaustion rule in this case, where there are no simultaneous administrative and judicial proceedings and application of an exhaustion rule would result in a forfeiture of Plaintiff's ADEA retaliation claim. *Bankston,* 345 F.3d at 776. Because there are no administrative proceedings currently pending and Plaintiff has no right to further administrative review, the rationale for the exhaustion rule is not applicable. *Id.* Accordingly, the Court concludes that Plaintiff's ADEA retaliation claim should not be dismissed for failure to exhaust administrative remedies.

### B. ADEA Statutory Framework

The ADEA makes it unlawful for an employer to discriminate "because of

---

**11.** Plaintiff argues that he raised his retaliation claim "in his EEO fact finding hearing" and cites to Plaintiff's Declaration and Exhibit 1 of his Concise Statement of Facts. Pl.'s Opp. at 25. However, the Court was unable to find an explicit retaliation claim in the exhibits and documents cited by Plaintiff. *See generally* Decl. of Morris, Pl.'s CSF Ex. 1.

[an] individual's age." 29 U.S.C. § 623(a)(1). The prohibition is "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). To prevail on an ADEA claim, a plaintiff must prove at trial that age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.* at 2349.

■ In order to analyze the evidence in an orderly way, motions for summary judgment regarding ADEA claims may be analyzed using the burden-shifting framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Shelley v. Geren,* 666 F.3d at 608 (9th Cir.2012) (holding that the *McDonnell Douglas* burden-shifting framework applies to summary judgment motions under the ADEA).

■ For the first step in the burden-shifting framework, Plaintiff must present evidence of a prima facie case of employment discrimination by showing that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he was subjected to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir.2008).

The Ninth Circuit has held that "the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of California Davis Bd. of Trustees,* 225 F.3d 1115, 1124 (9th Cir.2000). "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full rec-

ord." *Id.* (citing *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996)) (internal quotation marks omitted).

■ If Plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn v. Executive Jet Management, Inc.,* 615 F.3d 1151, 1155 (9th Cir.2010).

■ If Defendant meets this burden, a plaintiff must raise "a triable issue of material fact" as to whether Defendant's proffered reasons for the adverse employment actions are "mere pretext for unlawful discrimination." *Hawn,* 615 F.3d at 1155. "[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage." *Hawn,* 615 F.3d at 1158.

■ "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. Cnty. of Los Angeles,* 349 F.3d 634, 641 (9th Cir.2003). Direct evidence is usually composed of "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.,* 413 F.3d 1090, 1094–95 (9th Cir.2005); *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1113 (9th Cir. 2011) (holding that "comments from supervisors betraying bias or animus against older workers" constitute direct evidence of age discrimination). "Because direct evidence is so probative, the plaintiff need offer 'very little direct evidence to raise a genuine issue of material fact.'" *Id.* at 1095. In contrast, circumstantial evidence constitutes "evidence that requires an additional inferential step to demonstrate discrimination." *Id.* at 1095. A plaintiff's circumstantial evidence must be both specific and substantial in order to survive

summary judgment. *Becerril v. Pima Cnty. Assessor's Office,* 587 F.3d 1162, 1163 (9th Cir.2009).

## C. Prima Facie Case

Here, the first and second elements of Plaintiff's prima facie case are clearly met: Plaintiff is over forty years old and was qualified for the Supervisory Operations Officer position. *See generally* Def.'s Mot., ECF No. 70. Further, Defendant conceded during the January 23, 2014, hearing that element four of Plaintiff's prima facie case was also met because a person twenty-five years younger than Plaintiff replaced him as Supervisory Operations Officer. *See* Decl. of Morris at 12, ¶ 16(e). The point of contention lies over whether Plaintiff experienced an "adverse employment action."

Defendant argues that the Army's "refusal to waive Plaintiff's obligation under a settlement agreement does not constitute an 'adverse employment action' under the ADEA." Def.'s Mot. at 10. Defendant contends that Plaintiff originally proposed to retire in lieu of reassignment to a non-supervisory position and signed the settlement agreement reducing the essential contents of the memorandum to writing. *See* Def.'s CSF Ex. 4 (Memorandum to Debra Zedalis); Def.'s CSF Ex. 5 (Release and Settlement Agreement). Defendant further notes that Plaintiff waited six weeks after the settlement agreement was signed to request that it be rescinded. Def.'s CSF Ex. 6 (Memorandum for COL Margotta).

In addition to Defendant's refusal to rescind the settlement agreement, Plaintiff argues several other actions taken by the Army constitute an adverse employment action under the ADEA. Pl.'s Opp. at 18. Specifically, Plaintiff contends that the Army's "refusal to allow Plaintiff to remain in his job, threatened transfer, improper settlement agreement rendering in resignation/retaliation, and refusal to rescind Plaintiff resignation/retirement" all constitute adverse actions. *Id.*[12]

The Ninth Circuit defines "adverse employment action broadly." *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000). In *Ray,* the Court held that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Id.* at 1243. Accordingly, the

---

**12.** On pages 18 and 19 of his Opposition, Plaintiff refers to roughly 30 paragraphs in the FAC which purportedly show "adverse actions." Pl.'s Opp. at 18–19. The Court has discussed virtually all of the content of these paragraphs. Further, Plaintiff cites "paragraph 21 page 9" of the FAC. *Id.* at 18. In Paragraph 21 of the FAC, Plaintiff argues that his removal from the supervisory position was not mandatory under the NSPS Rules. FAC at 9–10, ¶ 21. Neither Plaintiff nor [continued ...] Defendant has submitted an exhibit providing the relevant portions of the NSPS Business Rules. However, as discussed in this Order, Plaintiff repeatedly refused to follow directions from his superiors despite repeated warnings that a failure to comply could result in disciplinary action. Therefore, there were numerous reasons to reassign Plaintiff to a non-supervisory position whether or not such reassignment was mandatory under the Rules. In addition, Plaintiff cites paragraphs 50 to 53 in the FAC. Pl.'s Opp. at 19. These paragraphs allege that Director Rozmiarek told Plaintiff, after Plaintiff sent in a job request, that CPAC would offer him a GS–11 job. As discussed in this Order, the Court finds Plaintiff's request to be reassigned to a GS–11 position was not an adverse action because the Army was not required to rescind the settlement agreement and give Plaintiff the GS–11 position merely because he desired it. As COL Margotta stated, "one of the things [Plaintiff] was asking for was essentially to go back into his old position, which would have meant for me as the commander to basically say that he did nothing wrong ... There was no new compelling evidence or anything that [Plaintiff] could bring to the table that would want me to go back on the agreement." Def.'s Reply at 12–13.

Court found "that a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Id.* at 1240. Such activities included a transfer of job duties, undeserved performance ratings, transfers to another job of the same pay and status, and dissemination of unfavorable job references. *Id.* at 1242 (citing *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987); *St. John v. Employment Development Dept.,* 642 F.2d 273, 274 (9th Cir.1981); *Hashimoto v. Dalton,* 118 F.3d 671, 676 (9th Cir.1997)).

In the instant suit, Plaintiff identifies three actions by the Army that he argues constitute an adverse employment action under the ADEA: (1) refusal to rescind the settlement agreement; (2) denial of Plaintiff's request to be reassigned to the GS–11 position; and (3) reassignment to a non-supervisory position.[13]

■ Refusing to accept Plaintiff's rescission of the settlement agreement that Plaintiff signed on February 1, 2008, was not an adverse action. Here, Defendant simply refused to permit Plaintiff to withdraw his decision because it believed Plaintiff was irrevocably bound to the terms of the settlement agreement. An employee's commitment to resign under the terms of a settlement agreement is a valid reason for an employer to refuse to accept his withdrawal of that resignation. *Green v. General Services Administration,* 220 F.3d 1313, 1317 (Fed.Cir.2000). Moreover, Plaintiff did not attempt to rescind the settlement agreement until six weeks after it was signed and originally proposed its material terms. *See* Def.'s CSF Exs. 4 (Memorandum to Debra Zedalis) & 6 (Memorandum to COL Margotta).

Plaintiff argues, however, that the settlement agreement was not made knowingly and voluntarily. Pl.'s Reply at 12–16. Specifically, Plaintiff claims, inter alia, that he did not draft the settlement agreement, had only ten minutes to read the agreement, and was not represented by counsel. Decl. of Morris at 6, ¶ 9, ECF No. 26.

■ "In order to overcome the presumption of voluntariness and demonstrate that a resignation or retirement was involuntary, the employee must satisfy a demanding legal standard." *Staats v. U.S. Postal Service,* 99 F.3d 1120, 1124 (Fed. Cir.1996). "The two principal grounds on which employees have sought to show that their resignations or retirements were involuntary are: (1) that the resignation or retirement was the product of misinformation or deception by the agency … and (2) that the resignation or retirement was the product of coercion by the agency." *Conforto,* 713 F.3d at 1121. "In order to establish involuntariness on the basis of coercion, an employee must show that the agency effectively imposed the terms of the employee's resignation, that the employee had no realistic alternative but to resign or retire, and that the employee's resignation was the result of improper acts by the agency." *Staats,* 99 F.3d at 1124.

---

13. During the hearing on January 23, 2014, Plaintiff also requested that the Court take notice of paragraph two of the Army's "Request for Disciplinary/Adverse Action" report. *See* Pl.'s CSF Ex. 14. Paragraph two directs the deciding official to "check one of the disciplinary/adverse actions listed below." *Id.* at 1. Listed below were the following: "Written Reprimand," "Suspension," "Demotion," and "Removal." *Id.* The deciding official marked the box next to "Removal." *Id.*

The Court finds that this section of the report, standing alone, does not establish that Plaintiff's reassignment was an adverse action. Given the available options, "removal" was the functional equivalent of "reassignment." Moreover, Plaintiff's handwritten mixed case appeal to the MSPB also marked the box "removal" to "describe[ ] the agency personnel action or decision [he] was appealing." Pl.'s CSF Ex. 1 (MSPB Mixed Case Appeal).

"An example of an involuntary resignation based on coercion is a resignation that is induced by a threat to take disciplinary action that the agency knows could not be substantiated." *See Schultz v. United States Navy,* 810 F.2d 1133, 1136 (Fed.Cir.1987) ("If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive."). The test for voluntariness is objective and requires the employee to establish that a reasonable employee confronted with the same circumstances would feel coerced into resigning or retiring. *Garcia v. Dep't of Homeland Security,* 437 F.3d 1322, 1329 (Fed. Cir.2006).

The doctrine of coercive involuntariness is thus a narrow one. *Staats,* 99 F.3d at 1124. "It does not apply to a case in which an employee decides to resign or retire because he does not want to accept a new assignment, transfer, or other measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant for the employee that he feels that he has no realistic option but to leave." *Id.* In other words, "the fact that an employee is faced with an unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary." *Id.*

Here, Plaintiff fails to demonstrate how the Army coerced Plaintiff into signing the settlement agreement. Plaintiff originally proposed the material terms of the settlement agreement in his January 7, 2008, memorandum to Director Zedalis, in which he offered to retire on April 30th if the Army allowed him to remain in as Operations Officer. Def.'s CSF Ex. 4. Plaintiff thus fails to show that the "agency effectively imposed the terms of the employee's resignation or retirement." *Staats,* 99 F.3d at 1124. Plaintiff also stat-

ed in the same memorandum that his "*career plan* was to retire from this job in mid 2008." Def.'s CSF Ex. 4 (emphasis added). Since Plaintiff was planning to retire around the same time as the retirement date listed in the settlement agreement, the Court finds it difficult to see how the employee's decision to retire was the result of improper acts by the Army. Next, Plaintiff argues that he only had ten minutes to read the agreement. Decl. of Morris at 6, ¶ 9, ECF No. 26. Plaintiff was notified on January 29, 2008, via email that the settlement agreement was ready for review. Plaintiff signed the agreement on February 1, 2008, three days after he was first notified that the document was ready for review and two days before he was to be reassigned to a non-supervisory position. Accordingly, Plaintiff had ample time to review and sign the agreement.

Plaintiff's decision to sign the agreement effectuating his retirement was not "induced by a threat to take disciplinary action that the agency knows could not be substantiated." *See Schultz,* 810 F.2d at 1136. Rather, the Army's basis for demoting Plaintiff and transferring him to a non-supervisory position was substantiated: Plaintiff refused to follow IMCOM's Pay Pool Business Rules and his superiors' directives.

"While it is possible Plaintiff, [himself], perceived no viable alternative" but to sign the settlement agreement, the record indicates that Plaintiff chose to sign the settlement agreement rather than challenge its validity. *Christie v. U.S.,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975). "The fact remains, [P]laintiff had a choice." *Id.* "He could stand pat and fight," but "chose not to." *Id.* "Merely because Plaintiff is faced with an inherently unpleasant situation in that his choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of his resignation." *Id.*

Finally, Plaintiff argues that the settlement agreement violates the Older Workers Benefit Protection Act ("OWBPA"). Pl.'s Reply at 13–14. Plaintiff claims that the settlement agreement violated the following portion of the OWBPA:

(f) Waiver

(1) An individual may not waive any right or claim *under this chapter* unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum—

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

. . .

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or

. . .

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

29 U.S.C. § 626(f) (emphasis added).

Although the Court agrees with Plaintiff that the settlement agreement did not comply with the OWBPA, the Army has not taken the position that Plaintiff waived his ADEA claim by signing the settlement agreement. Def.'s Mot. at 20, n. 7. The agreement's failure to comply with § 626(f) would only invalidate any waiver of ADEA claims and, therefore, does not invalidate the entire settlement agreement. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427–28, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) ("Since [Plaintiff's] release did not comply with the OWBPA's stringent safeguards, it is unenforceable against her insofar as it purports to waive or release her ADEA claim.") Accordingly, the settlement agreement remains in effect with respect to all but Plaintiff's ADEA claims.

Similarly, denying Plaintiff's request to be reassigned to the GS–11 position was not an adverse action. The Army was not required to give Plaintiff the position merely because he desired the position.

The Court, however, finds that Plaintiff's original transfer to a non-supervisory position falls under the Ninth Circuit's broad definition of adverse action. *Ray*, 217 F.3d at 1240. The Ninth Circuit has held that even a lateral transfer constitutes an adverse employment action. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions' "); *see also St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir.1981) (finding that a transfer to another job of the same pay and status may constitute an adverse employment decision). Here, the facts are even stronger than in *Yartzoff*: Plaintiff was transferred to a lower-grade, non-supervisory position. *See* Def.'s CSF at 3, ¶ 9. Because Plaintiff's involuntary transfer constituted an adverse employment action, Plaintiff satisfies the final element required to establish a prima facie ADEA claim.

**D. Burden–Shifting Analysis**

Since Plaintiff has established a prima facie case of age discrimination regarding his initial transfer to the non-supervisory position, the burden now shifts to Defendant to show that the adverse employment

action was taken for legitimate nondiscriminatory reasons. *Hawn*, 615 F.3d at 1155.

■ Defendant presents several legitimate nondiscriminatory justifications for the decision to transfer Plaintiff to a nonsupervisory position. First, Plaintiff repeatedly failed to comply with the Pay Pool Panel's directives and change or provide additional justification for his annual appraisal ratings. *See* Def.'s CSF Ex. 2 (Notice of Directed Reassignment).[14] Second, the Army found that Plaintiff's "demonstrated inability to follow supervisory standards negatively affected this entire organization. [Plaintiff] deliberately refused to abide by written standards and repeated requests from [his] Chain of Command." *Id.* at 2, ¶ 2. Finally, the Army determined that Plaintiff's "misconduct adversely affected their organization by [c]ompletely stopping the pay pool process and wasting the valuable man hours associated with [Plaintiff's] intentional, deliberate delay" and "affected the employees which represented the USAG–HI Pay Pool by delaying their ability to close out the board and return to their appointed places of duty." Def.'s CSF Ex. 6 at 3, ¶ 6.

Even assuming it constitutes an adverse action, Defendant also articulates several legitimate non-discriminatory reason for not allowing Plaintiff to rescind the settlement agreement: the settlement agreement was based upon Plaintiff's own proposal, Plaintiff entered into the settlement agreement voluntarily, and it was not in the Army's best interests to concede to Plaintiff's request that it be rescinded. Pl.'s Reply at 12. As COL Margotta explained, "one of the things [Plaintiff] was asking for was essentially to go back into his old position, which would have meant for me as the commander to basically say that he did nothing wrong ... There was no new compelling evidence or anything that [Plaintiff] could bring to the table that would want me to go back on the agreement." *Id.* at 12–13.

Thus, the burden shifts back to Plaintiff to raise "a triable issue of material fact" as to whether the Army's proffered reasons for their employment actions are "mere pretext for unlawful discrimination." *Hawn*, 615 F.3d at 1155.

Plaintiff attempts to present direct evidence of pretext in the form of a discriminatory statement in the Army's "Request for Disciplinary/Adverse Action" report, dated November 8, 2012. Pl.'s Opp. at 25. Paragraph nine of the document asks the deciding official[15] to "[l]ist any additional factors you considered in making your determination." Pl.'s CSF Ex. 14 at 6, ¶ 9. Under paragraph nine, the deciding official wrote: "Past occurrences, deliberate intensions, unwillingness to compromise, *age and maturity of the employee*, and experience. *Id.* (emphasis added). Defendant responds that these comments do "not relate to the decision-maker (COL Margotta) or the decision that is at issue in this case relating to the rescission of the settlement agreement." Def.'s Reply at 12, n. 4.

---

**14.** Plaintiff argues that he "was never told that he would be removed from his position if he did not change his evaluations." Pl.'s Opp. at 17; *see* Decl. of Morris at 3, ¶ 4(b), ECF No. 26. Although the Court notes that Defendant has not submitted an exhibit containing the relevant sections of the IMCOM's NSPS or Pay Pool Business Rules, Plaintiff received several written and oral warnings stating that he had to comply with his commanding officers' directives or face disciplinary action. *See* Def.'s CSF Ex. 2 at 1, ¶¶ 1(a)-(c).

**15.** The document states that the deciding official is named in paragraph 11. *See* Pl.'s CSF Ex. 14 at 1. Paragraph 11 lists DCOM Bryson Jhung as the deciding official. However, the Court notes that LTC Wallace and Deputy Director Brown's names are also listed at the end of the document. *Id.* at 6.

The Court finds that this statement, in conjunction with Plaintiff's circumstantial evidence, does not raise a genuine issue of material fact as to Defendant's discriminatory animus. A plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." *Parris v. Wyndham Vacations Resorts, Inc.*, 979 F.Supp.2d 1069, 1076, 2013 WL 5719475 at *6 (D.Haw. Oct. 18, 2013) (quoting *Gross*, 557 U.S. at 180, 129 S.Ct. 2343). In other words, a "plaintiff must show, at the summary judgment stage, that a reasonable trier of fact could conclude, by a preponderance of evidence, that the Plaintiff would not have been [subject to the adverse action] but for impermissible age discrimination." *Parris*, 979 F.Supp.2d at 1076, 2013 WL 5719475 at *6 (D.Haw. Oct. 18, 2013); *see Scheitlin v. Freescale Semiconductor, Inc.*, 465 Fed.Appx. 698, 699 (9th Cir.2012) (applying *Gross's* "but for" causation standard at the summary judgment stage). Here, the six-word statement in the document ("age and maturity of the employee") was apparently a stray remark and fails to establish that the Army's decision to initially transfer Plaintiff would not have been made but for impermissible age discrimination. The Army presented a valid, non-discriminatory reason for reassigning Plaintiff to a nonsupervisory position: he "deliberately refused to abide by written standards and repeated requests from [his] Chain of Command." Def.'s CSF Ex. 2 at 2, ¶ 2. Subsequently, the Army felt that it was in the "best interest of this organization" to reassign Plaintiff from his Supervisory Operations Officer position. *Id.* Although the statement may raise some additional concern over whether the Army took into account Plaintiff's age when it decided to reassign him, Plaintiff fails to produce sufficient evidence that the Army's reassignment decision was based solely on Plaintiff's age. *See Gross*, 557 U.S. at 175, 129 S.Ct. 2343 (holding that the text of the ADEA does not authorize a mixed-motives age discrimination claim).

Finally, Plaintiff argues that there is circumstantial evidence demonstrating that Defendant's proffered reasons for its employment actions are pretextual.[16] First, Plaintiff argues that COL Margotta "did not want Plaintiff to continue to work because there would be disruption." Pl.'s Opp. at 23. Plaintiff contends that this was pretextual "because Plaintiff was already in his position doing his job and there would be no disruption to keep him there." *Id.* The Court finds Plaintiff's argument unconvincing. In judging whether COL Margotta's explanation was "false," it is not important whether it was objectively false (e.g., whether Plaintiff's removal would actually be disruptive). *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir.2002). Courts "only require that an employer honestly believe[ ] its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir.2001) (internal quotation marks omitted)). Here, Plaintiff presents no evidence that COL Margotta did not honestly believe that allowing

---

**16.** Plaintiff argues that the Court should not grant summary judgment because "Plaintiff is still obtaining discovery from Defendant" and more "evidence of age discrimination is forthcoming." Pl.'s Opp. at 24–25. The Court finds that Plaintiff has had sufficient time and opportunity to submit any material that might controvert the statements set out in Defendant's Concise Statement of Facts. Plaintiff has had fair notice of Defendant's summary judgment motion, which was filed on August 9, 2013. *See* Def.'s Mot., ECF No. 10. Furthermore, and importantly, Plaintiff did not file a motion for continuance with an attached affidavit or declaration stating specifically what significant facts could be presented through further discovery. *See* Fed.R.Civ.P. 56(d).

Plaintiff to remain in the Operations Officer position would be disruptive. Indeed, as stated earlier, Plaintiff's supervisors found that he was disruptive because he refused to follow IMCOM's Pay Pool Business Rules and repeated directives from his superiors.

Next, Plaintiff contends that COL Margotta's statement that "there was nothing new[,] no new factors to consider" was pretextual because Brown and LTC Wallace were no longer his supervisors. Pl.'s Opp. at 23. The fact that Brown and LTC Wallace were no longer Plaintiff's supervisors fails to raise a genuine issue of fact because "circumstantial evidence of pretext must be specific and substantial." *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1163 (9th Cir.2009). The absence of these two supervisors would not appear to provide any reason for the Army to change its position and rescind the settlement agreement.

Finally, Plaintiff argues that COL Margotta's statement that "Plaintiff had to go because he did not take care of his employees" was pretextual because Plaintiff did take care of his employees. *See* Pl.'s Opp. at 23; Pl.'s CSF Ex. 13 ("Petition for Mr. Dennis Morris"). Again, Plaintiff submits no evidence that COL Margotta did not honestly believe his statement. *See Villiarimo*, 281 F.3d at 1063. Colonel Margotta could have easily determined that refusing to make changes to annual performance appraisals does not constitute taking care of one's employees. Plaintiff's disbelief of COL Margotta's explanations for the reassignment does not create a genuine issue of fact on pretext "because there is no evidence to substantiate his disbelief." *Becerril*, 587 F.3d at 1163; *see Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir.1986) ("These subjective personal judgments do not raise a genuine issue of material fact."). Rather, the Army's reassignment decision was sub-

stantiated: Plaintiff failed to follow his commanding officers' directives.

Consequently, the Court finds that Plaintiff has not met his burden of raising a triable issue of material fact as to whether the Army's proffered legitimate reasons for initially transferring Plaintiff to a non-supervisory position were pretextual. Further, even assuming it constituted an adverse action, Plaintiff has also failed to meet his burden of raising a triable issue of material fact as to whether the Army's refusal to rescind the settlement agreement was "mere pretext for unlawful discrimination." *Hawn*, 615 F.3d at 1158. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment regarding Plaintiff's ADEA claims.

### E. Plaintiff's ADEA Retaliation Claim

Plaintiff also brings a claim of retaliation under the ADEA. Pl.'s Opp. at 24–25. Section 623(d) of the ADEA makes it unlawful for an employer to retaliate against an employee for opposing "any practice made unlawful by [the ADEA], or because such [employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d). Plaintiff's ADEA retaliation claim appears to be based on the filing of his initial complaint with the EEOC in April 2008 and sending of letters to various elected officials and Army personnel. *See* Pl.'s CSF Ex. 1; FAC at 16–17, ¶ 42–43.

In order to establish a prima facie case of retaliation, a plaintiff must provide evidence of the following: "(1) he engaged in a protected activity; (2) he suffered an adverse employment action, and (3) there was a causal connection between the two." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir.2008).

Although Plaintiff can likely establish elements one and two necessary for a prima facie retaliation case, the Court concludes that Plaintiff fails to provide evidence of a causal link.

In *Clark County School District*, an employee filed a retaliation claim based upon her employer's decision to transfer her around the time that she filed charges with the EEOC and the Nevada Equal Rights Commission. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271–72, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The employee in *Clark* filed her lawsuit on April 1, 1997. *Id.* at 272, 121 S.Ct. 1508. On April 10, 1997, her supervisor mentioned to her union that the employee was thinking of transferring the employee to another position. *Id.* However, the employer did not receive notification of the lawsuit or the summons and complaint until April 11, 1997. *Id.* The employee's actual transfer took place in May. *Id.*

The Supreme Court held that summary judgment for the employer was appropriate because no causal connection existed between the employee's filing of her lawsuit and her subsequent transfer. *Clark*, 532 U.S. at 272, 121 S.Ct. 1508. According to the Court, employers "need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, thought not yet definitely determined, is no evidence whatever of causality." *Id.* The Supreme Court also noted that the fact that actual transfer occurred one month after the employee filed her suit was "immaterial" in light of the evidence that the employer had contemplated the transfer before the suit. *Id.*

 In this case, the decision to initially transfer Plaintiff to a non-supervisory position was made on December 13, 2007, when LTC Wallace delivered a memorandum titled "Subject: Notice of Direct Reassignment—Dennis Morris." FAC at

8, ¶ 18. The settlement agreement accepting Plaintiff's retirement was executed on February 1, 2008. Def.'s CSF at 4, ¶ 13. The letters were sent between the 5th and 8th of April 2008, and Plaintiff first contacted an EEO counselor on April 11, 2008. *See* FAC at 16–17, ¶ 42–43; Pl.'s CSF Ex. 1 (EEO Counselor Report).

Thus, both of Defendant's alleged adverse employment actions occurred before Plaintiff filed his initial EEOC complaint and sent letters to various elected officials and military personnel. In other words, Defendant's employment decisions had been finalized and were not influenced by Plaintiff's decision to engage in protected activity. *See Clark*, 532 U.S. at 272, 121 S.Ct. 1508. The Court therefore GRANTS Defendant's Motion for Summary Judgment regarding Plaintiff's ADEA retaliation claim because he has failed to present evidence of a causal connection between a protected activity and an adverse employment action.

### III. Plaintiff's Jury Demand

Notwithstanding Defendant's withdrawal of its Motion to Strike Plaintiff's jury demand since in fact the FAC does not include such a demand, the Court notes that Plaintiff's Opposition brief argues that a jury trial should be allowed in this case. Pl.'s Opp. at 26. The Court will address this contention for informational purposes.

The Supreme Court has determined that a plaintiff does not have a right to a jury trial in ADEA actions against the United States and federal employers. *Lehman v. Nakshian*, 453 U.S. 156, 168, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). The Supreme Court reasoned that since the federal government may not be sued without its consent and may be sued only on the terms to which it agrees, a plaintiff has a right to jury trial only if "Congress has affirmatively and unambiguously granted that right by statute." *Id.* The Supreme

Court concluded that Congress did not explicitly provide for jury trials under the ADEA against the federal government. *Id.* at 168–69, 101 S.Ct. 2698. Although Plaintiff "respectfully disagrees" with the *Lehman* decision, this Court is bound by Supreme Court precedent and, therefore, strikes Plaintiff's jury demand.

### CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Failure to State a Claim Upon Which Relief Can Be Granted with respect to Plaintiff's due process claims; and

(2) GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's Age Discrimination in Employment Act claim.

IT IS SO ORDERED.

### ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

For the following reasons, the Court DENIES Plaintiff Dennis Morris's Motion for Reconsideration and Relief from a Judgment or Order Dated February 4, 2014. Plaintiff largely reiterates arguments previously made and rejected in the Court's earlier ruling, and accordingly the Court will only address some of these repeated arguments.

### FACTUAL AND PROCEDURAL BACKGROUND [1]

This matter arises from Plaintiff Dennis Morris's ("Plaintiff" or "Morris") termination of employment from the United States Army. Plaintiff alleges Defendant John McHugh in his official capacity as United States Secretary of the Army ("Defendant" or "Army") discriminated against

Morris on the basis of his age. (First Amended Complaint ("FAC") ¶ 1.) On April 23, 2013, Plaintiff filed a First Amended Complaint and brought the following claims against Defendant: (1) violation of the Age Discrimination in Employment Act ("ADEA") and (2) violation of Plaintiff's due process rights under the 5th and 14th amendments to the United States Constitution and 5 U.S.C. § 7701(c)(2)(A). (*Id.* ¶¶ 70–74.)

On August 9, 2013, Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment ("Motion for Summary Judgment"), seeking judgment as to all of Plaintiff's claims. (Doc. No. 10.) On February 4, 2014, this Court issued its Order Granting Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Feb. 4 Order"). (Doc. No. 35.) In the Feb. 4 Order, the Court held that it lacked jurisdiction to hear Plaintiff's appeal of the final Merit Systems Protection Board ("MSPB" or "Board") decision and, therefore, dismissed Plaintiff's due process claims. (*Id.* at 23.) Regarding his ADEA claims, the Court found that Plaintiff failed to meet his burden of raising a triable issue of material fact as to whether the Army's proffered reasons for transferring Plaintiff to a nonsupervisory position were pretextual. (*Id.* at 50.) The Court also held that Plaintiff failed to meet his burden of raising a triable issue of material fact as to whether the Army's refusal to rescind the settlement agreement, even assuming it constituted an adverse action, was mere pretext for unlawful discrimination. (*Id.*)

On February 14, 2014, Plaintiff filed the instant Motion for Reconsideration, asking the Court to reconsider its Feb. 4 Order pursuant to Federal Rule of Civil Procedure ("Rule") 59(e) and Rules 60(a), (b)(2)

---

1. The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

and (b)(6). (Doc. No. 36.) Plaintiff attached the following to the Motion for Reconsideration: (1) Declaration of Dennis K. Morris; (2) copy of Plaintiff's deposition transcript; (3) memorandum of law in support of Plaintiff's Motion for Reconsideration; and (4) copy of the Supreme Court's decision in *Kloeckner v. Solis,* —— U.S. ——, 133 S.Ct. 596, 184 L.Ed.2d 433 (2012). (*Id.*) Defendant filed an Opposition on March 13, 2014. (Doc. No. 41.) Plaintiff filed his Reply on March 26, 2014. (Doc. No. 42.)

The Court determines that this matter may be addressed without a hearing under Local Rule 7.2(e). A more extensive procedural and factual background to this case may be found in this Court's Feb. 4 Order.

### STANDARD

A motion for reconsideration must (1) "demonstrate reasons why the court should reconsider its prior decision" and (2) "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Hele Ku KB, LLC v. BAC Home Loans Servicing, LP,* 873 F.Supp.2d 1268, 1289 (D.Haw.2012). The Ninth Circuit has held that reconsideration is appropriate if (1) the district court is presented with "newly discovered evidence," (2) the district court "committed

clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law." *Nunes v. Ashcroft,* 375 F.3d 805, 807 (9th Cir. 2004).[2]

Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.,* 689 F.Supp. 1572 (D.Haw.1988). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation,* 331 F.3d 1041, 1046 (9th Cir.2003) (citation omitted).

### DISCUSSION

### I. Whether This Court Made a Clerical Error

As a preliminary matter, Plaintiff correctly points out that the Feb. 4 Order incorrectly stated that the Army's "Request for Disciplinary Action/Adverse Action" report was dated November 8, 2012, rather than December 3, 2007. (Feb. 4 Order at 45–46; *see* Pl.'s CSF Ex. 14 at 1.) The Court acknowledges the error and agrees with Plaintiff that the Army executed the report on December 3, 2007. Nevertheless, the Court concludes that the clerical error was harmless and did not affect the Court's determination that Plaintiff failed to put forth sufficient evidence es-

---

**2.** The District of Hawaii has stated that "[m]otions seeking reconsideration of case-dispositive orders shall be governed by Fed. R.Civ.P. 59 or 60." D. Haw. Local Rule 60.1. Plaintiff filed the instant Motion for Reconsideration pursuant to Federal Rules of Civil Procedure 59(e), 60(a), (b)(2) and (b)(6). Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 60 further provides in relevant part:

 (a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever

one is found in a judgment, order, or other part of the record.

. . .

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under 59(b);

. . .

(6) any other reason that justifies relief.

tablishing his due process or ADEA claims. *See* Fed.R.Civ.P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

## II. Whether This Court Should Reconsider its Ruling on Plaintiff's Due Process Claims

Plaintiff argues that this Court should reconsider its ruling regarding Plaintiff's due process claims because (1) Plaintiff never received a hearing before a MSPB administrative law judge on Plaintiff's "harmful procedural error" and "age discrimination" claims, and (2) this Court misinterpreted or misapplied the Supreme Court's decision in *Kloeckner v. Solis,* —— U.S. ——, 133 S.Ct. 596, 184 L.Ed.2d 433 (2012). (Pl.'s Mot. at 9–11.) [3]

As the Court stated in its Feb. 4 Order, a "mixed case" appealable to the district court under 5 U.S.C. § 7703 is a case involving "an action that is *both* appealable to the MSPB *and* which allegedly involved discrimination." *Sloan v. West,* 140 F.3d 1255, 1261 (9th Cir.1988) (emphasis in original). The MSPB dismissed Morris's case on jurisdictional grounds because the Board determined that his decision to retire was voluntary and therefore did not constitute an "adverse action" appealable to the MSPB. (*See* Def.'s CSF Ex. 15.) [4] Because the Board did not have jurisdiction over Plaintiff's non-discrimination claim, this Court found that Plaintiff's case was not a "mixed case," and any appeal of the MSPB's jurisdictional determination must be filed in the Federal Circuit Court of Appeals, rather than in federal district court. (*See* Feb. 4 Order at 22–23.) [5]

---

3. Plaintiff also argues that he "did not raise a *Bivens* Action" and that "[t]his was explained to the Defense Counsel before Plaintiff's deposition, during the deposition and at oral argument." (Pl.'s Mot. at 10.) The Court's finding in the Feb. 4 Order that a *Bivens*-style claim could not be maintained against the Army was not the basis for dismissing Plaintiff's due process claims. (*See* Feb. 4 Order at 16–23.) Rather, the Court was merely disposing of any potential *Bivens* claims that Plaintiff may have been seeking to assert. (*See id.* at 23–24.)

4. The Court refers to Defendant's and Plaintiff's concise statement of facts that were filed to address Defendant's Motion to Dismiss or in the Alternative for Summary Judgment to establish the background for Plaintiff's Motion for Reconsideration.

5. Plaintiff further contends that both the Equal Employment Opportunity Commission ("EEOC") and the MSPB "deemed [his] case as a mixed case." (Pl.'s Reply at 4.) This Court observes that the EEOC and MSPB decisions referred to Plaintiff's "mixed case complaint." (*See* Def.'s CSF Ex. 11 at 1, Ex.

12 at 5–6, Ex. 13 at 1 & 3, Ex. 15 at 4–5.) However, Plaintiff appears to conflate the term "mixed case complaint" with "mixed case appeal." As the Ninth Circuit in *Sloan* makes clear, "a 'mixed case appeal' is not a subset of a 'mixed case complaint.'" *Sloan,* 140 F.3d at 1259. A "mixed case complaint" is merely a "complaint which alleges the employee suffered an adverse employment action that was affected ... by unlawful discrimination." *Id.* In contrast, a "mixed case appeal" is "an action that is *both* appealable to the MSPB and which allegedly involved discrimination." *Id.* at 1261 (emphasis in original). "The MSPB must decide it has jurisdiction over a case before it becomes a 'mixed case appeal.'" *Id.* at 1259. An employee may seek judicial review in district court if the Board dismisses his mixed case *appeal. See* 5 U.S.C. § 7703. In this case, however, the MSPB determined that Plaintiff's case did not constitute a "mixed case appeal" because his resignation was voluntary and, therefore, was not an appealable action. (*See* Feb. 4 Order at 22–23.)

Plaintiff argues that this Court's holding runs contrary to the Supreme Court's decision in *Kloeckner* and quotes the following language from that case:

> A federal employee who claims that an agency action appealable to the MSPB violates an antidiscrimination statute listed in [5 U.S.C.] § 7702(a)(1) should seek judicial review in district court, not in the Federal Circuit. That is so whether the MSPB decided her case on procedural grounds or instead on the merits. Kloeckner therefore brought her suit in the right place.

*Kloeckner*, 133 S.Ct. at 607.

Citing to the Federal Circuit's decision in *Conforto*, this Court found in its Feb. 4 Order that *Kloeckner* does not explicitly address whether jurisdictional dismissals by the MSPB should go to the Federal Circuit or to a district court. *Conforto v. Merit Systems Protection Board*, 713 F.3d 1111, 1117 (Fed.Cir.2013.) In *Conforto*, the Federal Circuit held that the "statutory text, the Court's rationale in *Kloeckner*, our own prior decisions, and the decisions of other courts all indicate that an appeal from the Board's dismissal for lack of jurisdiction belongs in this Court." *Id.* The *Conforto* decision comports with Ninth Circuit case law holding that an appeal from a MSPB jurisdictional dismissal belongs in the Federal Circuit. *See, e.g., Sloan*, 140 F.3d at 1262. In the instant Motion for Reconsideration, Plaintiff does not direct the court to any recent Ninth Circuit or Federal Circuit cases that run contrary to the *Conforto* and *Sloan* decisions. *See Nunes*, 375 F.3d at 807 ("Reconsideration is appropriate ... if there is an intervening change in controlling law.")

Although the Court agrees with Plaintiff that all of the acts giving rise to his claims appear to have occurred in Hawaii, any appeal of the final MSPB decision must be filed with the Federal Circuit, pursuant to the Ninth Circuit and Federal Circuit's holdings in *Sloan* and *Conforto*. Indeed, as the Court noted in the Feb. 4 Order, the MSPB expressly notified Plaintiff that his right to judicial review of the Board's final decision lay with the Federal Circuit. (Feb. 4 Order at 23.) Accordingly, this Court did not make a manifest error of law when it dismissed Plaintiff's due process claims and, therefore, DENIES Plaintiff's Motion for Reconsideration with respect to his due process claims.[6]

### III. Whether This Court Should Reconsider its Ruling on Plaintiff's ADEA Claims

Plaintiff argues that this Court should reconsider its ruling regarding Plaintiff's ADEA claims because, inter alia, (1) Plaintiff has not had sufficient time to complete discovery; (2) Plaintiff's deposition transcript was unavailable at the time he filed his Opposition to Defendant's Motion for Summary Judgment; and (3) an issue of material fact exists over whether Plaintiff's retirement was voluntary. (Pl.'s Mot. at 4–9.) For the following reasons, the Court DENIES Plaintiff's Motion for Reconsideration with respect to his ADEA claims.

---

**6.** The Court notes that the MSPB in its February 14, 2013 decision notified Plaintiff that any appeal should be filed with the Federal Circuit. (Def.'s CSF Ex. 15 at 12–13.) However, Plaintiff adamantly refuses to file an appeal with the Federal Circuit even though this Court in its Feb. 4 Order ruled that his due process claims should be heard before the Federal Circuit. (*See* Feb. 4 Order at 22–23.) In fact, Plaintiff argued this matter on a motion for reconsideration and, therefore, it is clear that Plaintiff has not sought to have his due process claims transferred to the Federal Circuit, pursuant to 28 U.S.C. § 1631. *See Powell v. Dep't of Defense*, 158 F.3d 597, 600 n. 3 (D.C.Cir.1998) ("Even if this were a case in which the 'interests of justice' required such a transfer, [plaintiff] has not sought such relief in this court.") (internal citation omitted).

## A. Plaintiff Had Sufficient Time to Conduct Discovery

Plaintiff's first argument is that the Summary Judgment Order failed to note that Defendant never answered Plaintiff's complaint,[7] the discovery deadline was May 30, 2014, and Plaintiff indicated in his Memorandum in Opposition and at the January 23, 2014 hearing that he wanted additional time to conduct discovery. (*Id.* at 4.) As such, Plaintiff requests the Court to reconsider its Feb. 4 Order and allow Plaintiff to complete discovery. (*Id.*)

This Court found in its Feb. 4 Order, and continues to find, that Plaintiff has had sufficient time and opportunity to submit any material that might controvert the exhibits and statements set forth in Defendant's Concise Statement of Facts. (Feb. 4 Order at 48, n. 15.) Defendant's Motion for Summary Judgment and Concise Statement of Facts were filed on August 9, 2013. (Doc. Nos. 10–11.) Plaintiff argues that the hearing date for Defendant's Motion for Summary Judgment was originally scheduled for February 10, 2014, but "[f]or reasons unknown to Plaintiff, the hearing was advanced to January 23, 2014, thereby advancing the time Plaintiff had to oppose the Defendant's Motion." (Pl.'s Mot. at 5.) However, Plaintiff ignores the fact that this Court granted two joint requests for continuances; the hearing for Defendant's Motion for Summary Judgment was originally set for November 4, 2013, but was eventually continued to January 23, 2014. (Doc. Nos. 17, 19 & 23.) Because the deadline for Plaintiff's Opposition was January 2, 2014, Plaintiff had nearly five months to conduct discovery prior to the filing of his Opposition. *See* D. Haw. Local Rule 7.4 ("An opposition to a motion set for hearing shall be served and filed not less than twenty-one days prior to the date of hearing.")

Further, and importantly, Plaintiff failed to abide by Federal Rule of Civil Procedure 56(d)[8] by filing a motion for continuance with an attached affidavit stating specifically what significant facts could be presented through further discovery in support of Plaintiff's ADEA claims. *See* Fed.R.Civ.P. 56(d). Instead, Plaintiff's *Memorandum in Opposition* to the Army's Motion for Summary Judgment vaguely asserted that "Plaintiff is still obtaining discovery from Defendant" and more "evidence of age discrimination is forthcoming." (Feb. 4 Order at 48.) As this Court previously stated, "[f]ailure to comply with the requirements of Rule 56(d) is a proper ground for denying discovery and proceeding to summary judgment." *Uy v. Wells Fargo Bank, N.A.,* Civ. No. 10–00204 ACK–RLP, 2011 WL 1235590 at *3 (D.Haw. Mar. 28, 2011) (quoting *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986)); *see State of Cal., on Behalf of California Dept. of Toxic Substances Con-*

---

7. Contrary to Plaintiff's assertion, there is no requirement under the Federal Rules that a plaintiff must file an answer before filing a motion to dismiss or a motion for summary judgment. *See Underhill v. Porter,* 35 F.3d 560 (5th Cir.1994) (finding that defendant "was not required to file an answer before the district court ruled on his motions") *and Rivera v. AuthorHouse,* Civ. No. 3:07cv268, 2008 WL 131046 at *12 (N.D.Ind. Jan. 10, 2008) (concluding that "defendants [were] not required to file an answer because they filed motions to dismiss"). Moreover, Defendant filed a detailed Concise Statement of Facts with sixteen attached exhibits. Defendant's Concise Statement of Facts was sufficient to notify Plaintiff as to which factual allegations in the FAC the Army admitted or denied.

8. Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d).

*trol v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule [56(d)]."); *see also U.S. v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.1993) (holding that Rule 60(b)(6) "relief may not be had where the party seeking reconsideration has ignored normal legal recourses"). Accordingly, this Court's decision to grant Defendant's Motion for Summary Judgment notwithstanding Plaintiff's assertion that he was still obtaining discovery was not manifestly unjust. *See Nunes*, 375 F.3d at 807.

### B. Consideration of Attached Deposition Transcript and Declaration

In addition to requesting reconsideration in order to conduct more discovery, Plaintiff asks this Court to consider his attached deposition transcript[9] and declaration.[10] (Pl.'s Mot. at 4.) Pursuant to Federal Rule of Civil Procedure 60(b)(2), Plaintiff must establish that the declaration and deposition constitute "newly discovery evidence." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir.2003) (citing *Coastal Transfer Co. v. Toyota Motor Sales, Inc.*, 833 F.2d 208, 211 (9th Cir.1987)). Plaintiff must also have "exercised due diligence to discover the evidence," and "the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Id.*

Preliminarily, and as discussed more in detail below, Plaintiff obviously could have set forth in a declaration in opposition to Defendant's Motion whatever he had stated in his deposition.

Under the Federal Rules, evidence is not "newly discovered" if it was in the moving party's possession before the judgment was rendered. *Id.* Plaintiff contends that his own deposition testimony constitutes newly discovered evidence because it was not obtained until after December 27, 2013, the date upon which Plaintiff filed his Opposition to Defendant's Motion for Summary Judgment and Concise Statement of Facts. (Doc. Nos. 25–26.) However, the Ninth Circuit has held that a party possessing evidence for as little as eight days prior to a court's summary judgment ruling could not invoke Rule 60(b)(2). *See Feature Realty*, 331 F.3d at 1093 (affirming district court's denial of Rule 60(b)(2) motion); *see also Gonzalez–Pina v. Rodriguez*, 407 F.3d 425, 433–34 (1st Cir.2005) (affirming district court's denial of Rule 60(b)(2) motion where movant had obtained deposition testimony two weeks prior to summary judgment). Plaintiff cannot now seek refuge under Rule 60(b)(2) because he obtained the deposition at the very latest on January 13, 2014, three weeks before the Court's issuance of the Feb. 4 Order. Moreover, as explained above, Plaintiff did not file a Rule 56(d) motion requesting an extension of time to submit a copy of the deposition transcript. *See* Fed.R.Civ.P. 56(d).

Similarly, Plaintiff's attached declaration does not constitute "newly discovered evidence" because Plaintiff's own testimony was clearly always in his possession. *See Feature Realty*, 331 F.3d at 1093. Plaintiff's declaration is also not based on newly discovered evidence; instead, Plaintiff's declaration discusses evidence that was already before the Court on Defendant's Motion for Summary Judgment. *See, e.g.,*

---

9. The Court notes that Defendant had attached a portion of Plaintiff's deposition transcript, roughly 15 pages, to its Reply in Support of the Motion for Summary Judgment.

10. The declaration attached to the instant Motion for Reconsideration is an entirely new declaration; Plaintiff's Concise Statement of Facts also contained a declaration by Morris. (*See* Pl.'s CSF.)

Decl. of Morris at 6 ("I presented evidence showing that ... persons who worked under me submitted letters to Colonel Margotta and the letters supported me as a good worker and supervisor who should be kept.")

Even assuming Plaintiff's attached declaration and deposition constitute "newly discovered evidence" within the meaning of Rule 60(b)(2), he must also have "exercised due diligence to discover the evidence," and "the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty,* 331 F.3d at 1093.

Here, Plaintiff has not argued that he exercised due diligence in obtaining the deposition transcript and simply states that he did not receive a copy of the transcript until January 13, 2014. (Pl.'s Mot. at 5.) Plaintiff does not explain his inability to obtain the transcript before January 13, 2014, even though he was deposed on December 16, 2013. (*Id.*) Furthermore, as discussed below, a copy of the deposition transcript would not have changed the Court's determination that Plaintiff did not produce sufficient evidence establishing that the Army discriminated against him on the basis of his age. Accordingly, Plaintiff fails to meet any of the requirements of *Feature Realty.*

### C. Plaintiff's Intentions to Retire

Plaintiff's next argument is that the Court erred when it found that Morris "had intentions to retire based upon [a] single sentence in a letter he sent dated January 7, 2008." (Pl.'s Mot. at 5.) [11]

This Court's finding that Plaintiff had intentions to retire was in response to his argument that the settlement agreement effectuating his retirement was not made voluntarily. (Feb. 4 Order at 40.) As stated in the Feb. 4 Order, an employee must show the following in order to establish that a retirement decision was involuntary and a product of coercion: the agency effectively imposed the terms of the employee's resignation, the employee had no realistic alternative but to resign or retire, and the employee's resignation was the result of improper acts by the agency. *Staats v. U.S. Postal Service,* 99 F.3d 1120, 1124 (Fed.Cir.1996).

Because Plaintiff expressly stated in the January 7, 2008 memorandum to Director Debra Zedalis that his "*career plan* was to retire from this job in mid 2008," this Court found that Morris was planning to retire around the same time as the retirement date listed in the settlement agreement and, therefore, failed to establish that his "decision to retire was the result of improper acts by the Army." (Feb. 4 Order (emphasis added).) Although Plaintiff directs the Court to several actions that he claims indicate he had no intention of retiring, Plaintiff's statement in the January 7, 2008 memorandum that his career plan was to retire in mid–2008 was unequivocal. In this memorandum, Plaintiff offered to "submit a formal written intent to retire" if the Army allowed him to remain in as Operations Officer until he retired in late April. (Def.'s CSF Ex. 4.) These terms were incorporated into the settlement agreement that the Army prepared. Pursuant to the settlement agreement, Morris agreed to "resign effective

---

11. Plaintiff also repeats his previous argument that he was never given a "direct verbal order" to change the annual performance appraisals. (Pl.'s Reply at 7; Pl.'s Dep. Transcript at 140–41.) This argument is a distinction without a difference because Plaintiff admits in his own amended complaint that he received several written and oral directives from his superiors instructing him to change the appraisals or face disciplinary action. (Feb. 4 Order at 3–4, 44 n. 13; FAC ¶¶ 12–13.)

[April 26, 2008] and apply for retirement benefits" in exchange for the Army "allow[ing] Morris to remain in his position as Supervisory Operations Officer ... until April 26, 2008." (*Id.* Ex. 5.) Plaintiff had sufficient time to review the settlement agreement. As noted below, Morris signed the settlement agreement on February 1, 2008, three days after he was first told that the document was ready for review and two days before he was to be reassigned. (Feb. 4 Order at 40–41.) Plaintiff also had ample opportunity to obtain advice from an attorney. Specifically, Plaintiff could have sought legal advice from December 13, 2007, the date upon which he received the "Notice of Directed Reassignment" from Lieutenant Colonel Michael Wallace, to February 1, 2008, the date upon which he signed the settlement agreement effectuating his retirement. Accordingly, this Court did not commit an error when it found that Plaintiff had intentions to retire. *Nunes,* 375 F.3d at 807.

Nevertheless, Plaintiff now argues that this Court's finding runs contrary to *Perlman v. United States,* 203 Ct.Cl. 397, 490 F.2d 928 (Ct.Cl.1974), and *Scharf v. Dep't of the Air Force,* 710 F.2d 1572 (Fed.Cir. 1983). These cases, which Plaintiff did not cite previously, do not change the Court's determination that the Army's refusal to accept Plaintiff's rescission of the settlement agreement was not an adverse action.

In *Perlman,* a Civil Service employee's decision to retire was held involuntary because the employee attempted to seek verification that retirement would void his appeal rights, but had fewer than eight hours to contact the Civil Service Commission and confirm the information integral to his retirement decision. *Perlman,* 490 F.2d at 930–31. Here, Plaintiff was not faced with same time constraints as the employee in *Perlman:* Morris signed the settlement agreement on February 1,

2008, three days after he was first notified that the document was ready for review and two days before he was to be reassigned to a non-supervisory position. (Feb. 4 Order at 40–41.) Further, and in contrast to *Perlman,* Plaintiff does not argue that he was uncertain of the effect of signing the settlement agreement. In addition, the employee in *Perlman* sought to withdraw his retirement application a week after he submitted it whereas Morris waited six weeks to attempt to rescind the settlement agreement. *Perlman,* 490 F.2d at 931.

Plaintiff also relies on the Federal Court of Claim's decision in *Scharf* to argue that Plaintiff did not sign the settlement agreement voluntarily. Specifically, Plaintiff directs the Court to the following language from *Scharf:*

> With freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action; (2) an employee unsuccessfully tries to withdraw his resignation before its effective date; (3) an employee submits a resignation under time pressure; or (4) an employee fails to understand the situation due to mental incompetence. Several other cases have also indicated that a resignation will be held involuntary if obtained by agency misrepresentation or deception.
>
> . . .
>
> An employee is not required to show an intent to deceive on the part of the agency in order for his retirement to be held involuntary. Rather, it is sufficient if the employee shows that a reasonable person would have been misled by the agency's statements. We have in the past applied an objective test in situations involving duress or coercion. We believe that an objective test is equally

applicable to situations involving misrepresentations or deception.

*Scharf,* 710 F.2d at 1574–75 (internal citations omitted).

The facts in *Scharf* are clearly distinguishable from this case. Here, Plaintiff alleges that he spoke with Joseph Rozmiarek, Director of Civilian Personnel, after he received his notice of reassignment, and Rozmiarek "put the idea in [his] head" that he should offer a compromise. (Pl.'s Dep. Transcript at 113–14.) According to Plaintiff, Rozmiarek told him that "one possibility would be to retire at a certain date in exchange" for the Army allowing him to remain in his supervisory position. (*Id.* at 114) However, unlike the employee in *Scharf,* Plaintiff does not allege that, based on Rozmiarek's statements, he failed to understand the consequences of submitting a voluntary resignation. *See Scharf,* 710 F.2d at 1575 ("In this case, the petitioner contends that his optional retirement was involuntary because he was misled and failed to understand that he could not return to the rolls to exhaust his accumulated sick leave if his optional retirement preceded his disability retirement. The record clearly indicates that petitioner's failure to understand was due to the fact that he was misled as to the consequences of his optional retirement by the agency counselor, Mr. Tanner.") In particular, Plaintiff does not assert that Rozmiarek misled him to believe that he would have the ability to rescind his retirement offer and remain as Supervisory Operations Officer.

Furthermore, Plaintiff in the instant Motion for Reconsideration does not argue that he failed to understand the situation due to mental incompetence. Plaintiff also does not establish that he was forced to sign the settlement agreement under time pressure. As noted above, Plaintiff had almost a week in which to review and sign the settlement agreement. (Feb. 4 Order

at 40–41.) Moreover, the settlement agreement provided the essential terms he had proposed.

Accordingly, the only remaining issues are whether Plaintiff signed the settlement agreement "under duress brought on by government action" and whether Plaintiff "unsuccessfully trie[d] to withdraw his resignation before its effective date." *Scharf,* 710 F.2d at 1574.

With respect to the first issue, Plaintiff cites to page 143 of his deposition transcript and argues that he felt that he "signed the Agreement under duress." (Decl. of Morris at 4.) The deposition transcript provides, in relevant part:

> A: But that memorandum that I was handed, that settlement agreement, I signed it under duress, I was in a situation where I wanted to remain in my job, and I would not have signed that agreement if I had known that my ADEA rights were being violated, I would not have signed it if they said to me: Here's the agreement, you have 21 days to think about it, go see a lawyer, I would never have signed that agreement in the form that it was, but I didn't realize it was legally flawed and, per se, age discrimination at the time.

(Pl.'s Dep. Transcript at 143–44.) The mere fact that Plaintiff "wanted to remain in [his] job" does not overcome the presumption that his decision to sign the settlement agreement was voluntary. *See Christie v. U.S.,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (Ct.Cl.1975) ("Employee resignations are presumed to be voluntary.") In order to show that he signed the settlement agreement under duress, Plaintiff must demonstrate "that circumstances permitted no other alternative" and "that said circumstances were the result of coercive acts of the opposite party." *Id.* Plaintiff contends that he "felt pressured" to sign the settlement agreement because his

only other alternatives were to accept the transfer to the nonsupervisory position or "be considered AWOL." (Decl. of Morris at 4.) However, the mere "fact that an employee is faced with an unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary." *Staats,* 99 F.3d at 1124. Moreover, COL Margotta expressly informed Morris of his right to challenge the reassignment through a grievance procedure, but he declined to grieve this matter. (*See* Def.'s CSF Ex. 3.) Rather than challenging, rejecting, or accepting the reassignment, Plaintiff chose to sign the settlement agreement and agree to retire in exchange for the Army allowing him to remain in the supervisory position.[12]

Plaintiff also appears to argue that his decision was made under duress because he would not have signed the settlement agreement had he known it violated the Older Workers Benefit Protection Act ("OWBPA"). The Feb. 4 Order directly addressed Plaintiff's argument that the settlement agreement was invalid because it violated the OWBPA. (Feb. 4 Order at 41–43.) As this Court previously stated, the Army is not defending against Plaintiff's ADEA claims by arguing his ADEA claim was waived under the settlement agreement. (*Id.* at 42.) The settlement agreement's failure to comply with the OWBPA would only invalidate any waiver of federal claims under the ADEA and, therefore, does not invalidate the entire agreement. *See, e.g., Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427–28, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) ("Since Oubre's release did not comply with the OWBPA's stringent safeguards, it is unen-

forceable against her insofar as it purports to waive or release her ADEA claim. As a statutory matter, the release cannot bar her ADEA suit, irrespective of the validity of the contract as to other claims."); *Harmon v. Johnson & Johnson,* 549 Fed. Appx. 687 (9th Cir.2013) (holding that "the failure to comply with the OWBPA did not invalidate the release as to Harmon's state law claims because the OWBPA applies only to federal claims under the [ADEA]"); *Lange v. DOI,* 94 M.S.P.R. 371, 376 (2003) ("Since the appellant has shown no basis for invalidating the entire settlement agreement, we find that the settlement agreement is still in effect with respect to all but the appellant's ADEA-related claim."). Consequently, the Court determines that Plaintiff fails to raise a genuine issue of material fact as to whether Plaintiff signed the settlement agreement under duress.

With respect to the second issue, *Scharf* held that the "element of voluntariness is vitiated when ... an employee unsuccessfully tries to withdraw his resignation before its effective date." *Scharf,* 710 F.2d at 1574 (citing *Cunningham v. United States,* 191 Ct.Cl. 471, 423 F.2d 1379, 1384–85 (Ct.Cl.1970)). However, the *Scharf* court never discussed this holding because the plaintiff-employee in that case never attempted to withdraw his resignation. *See id.* at 1572–74. This Court must therefore examine the Court of Claim's decision in *Cunningham v. United States,* the case cited by *Scharf.*

In *Cunningham,* an Air Force civilian employee submitted a written resignation on May 23, 1959, with an effective retirement date of June 12, 1959. *Cunningham,*

---

12. The Court also finds that the settlement agreement was a contract and, as such, there is no evidence or argument that the Army failed to fulfill its obligations under the settlement agreement. *See Greco v. Dep't of Army,* 852 F.2d 558, 560 (Fed.Cir.1988) ("It is axio-

matic that a settlement agreement is a contract."). The record clearly indicates that, pursuant to the terms of the settlement agreement, Morris remained in the Supervisory Operations Officer position until his effective retirement date, April 26, 2008.

423 F.2d at 1380. A mere eight hours after submitting it, she attempted to orally withdraw the resignation. *Id.* After her oral request was denied, she wrote two letters to her Commanding General requesting a grievance hearing pursuant to Air Force regulations and asserting that her resignation letter was a product of duress. *Id.* at 1380–81. The Air Force refused to allow the employee to withdraw the resignation despite her request for a grievance hearing and claim of duress. *Id.* at 1381–82. The Court of Claims found that there was no valid determination by the Air Force that her resignation was voluntary and not a product of duress, and that she was not provided with a procedurally valid grievance hearing as mandated by Air Force regulations. *Id.* at 1382. Accordingly, the court found that the employee's separation from the Air Force was an "adverse action" taken by the agency that resulted in her "removal." *Id.*

In this case, it is undisputed that Morris attempted to rescind the settlement agreement prior to the effective date of his retirement. As discussed below, the Court has distinguished the ruling in *Cunningham* as not applicable to the facts of this case. Moreover, Plaintiff has enjoyed the benefits of the settlement agreement by being allowed to remain in his position for some six weeks before he attempted to rescind the agreement; he had received a substantial portion of the quid pro quo for the settlement. Plaintiff signed the settlement agreement on February 1, 2008, and only attempted to rescind it six weeks later. Because the retirement date listed in the settlement agreement was April 26, 2008, Plaintiff had received roughly one-third of the consideration offered by the Army before he attempted to rescind the settlement agreement.

In *Cunningham,* the court found that the Air Force did not make a valid determination that the employee's resignation

was voluntary because it "ignored her clear assertion of duress." *Id.* Here, Morris did not attempt to notify Army personnel that he signed the settlement agreement under duress when he asked them to rescind the agreement; rather, he simply stated in the March 14, 2008 memorandum that it was a "drastic mistake" to sign the settlement agreement. (Def.'s CSF Ex. 6 at 1.) Although Plaintiff now argues in the declaration attached to the instant Motion for Reconsideration that he "signed the Agreement under duress," his conclusory statement lacks detailed facts and supporting evidence demonstrating that he notified the Army that he signed the agreement under duress. *See F.T.C. v. Neovi, Inc.,* 604 F.3d 1150, 1159 (9th Cir.2010) (finding that a conclusory, uncorroborated, or self-serving affidavit may not create a genuine issue of material fact). As such, the Army was not required under *Cunningham* to determine whether Morris's resignation was a product of duress and therefore involuntary. In fact, the Army had little reason to question whether the Plaintiff's retirement was voluntary since he proposed the material terms of the settlement agreement.

Additionally, there is nothing in the record that indicates that the Army has regulations similar to the Air Force regulations in *Cunningham* requiring the Army to grant Morris a grievance hearing if he requested one after he sought to rescind the settlement agreement.

Moreover, Plaintiff waited six weeks to attempt to rescind the settlement agreement, while the employee in *Cunningham* sought to withdraw the settlement agreement eight hours after she sent the resignation letter. Finally, Plaintiff ignores the fact that the Army, unlike the Air Force in *Cunningham,* presented several legitimate reasons for not rescinding the settlement agreement. (*See* Feb. 4 Order at 45.)

**1182**

The Court also notes that several MSPB cases have held that a separation pursuant to a retirement is deemed involuntary when the agency improperly denied the employee's request to withdraw his retirement before its effective date. *See Schwartz v. U.S. Postal Service*, 68 M.S.P.R. 142, 145 (1995); *Jostsons v. U.S. Postal Service*, 58 M.S.P.R. 74, 79 (1993), *aff'd*, 26 F.3d 139 (Fed.Cir.1994). These cases have further held that an employee has the right to rescind his decision to retire at any time before it is to be effective, unless the agency has a valid reason for refusing to permit such a rescission. *See id.* "The agency [bears] the burden of proving that it had" such a reason. *Olsen v. Dep't of Army*, 65 M.S.P.R. 60, 63 (1994). If "the agency improperly denies the request, the employee's separation is deemed involuntary and tantamount to an appealable removal." *Douglas v. Dep't of Defense*, 108 M.S.P.R. 244, 248 (2008). Here, the Army refused to permit Morris to rescind the settlement agreement effectuating his retirement. However, Plaintiff's retirement cannot be deemed involuntary because the Federal Circuit has held that an employee's commitment to resign under the terms of a settlement agreement is a valid reason for an agency to refuse to accept his withdrawal of that resignation. *Green v. General Services Administration*, 220 F.3d 1313, 1317 (Fed.Cir.2000); *Tretchick v. Dep't of Transp.*, 109 F.3d 749, 751 (Fed.Cir.1997). Furthermore, as discussed above and herein below, the Army has established several other valid reasons for declining to grant Plaintiff's request to rescind the settlement agreement and his agreement to retire.

In any event, even assuming (but not finding) the Army's refusal to rescind the settlement agreement was an adverse action, Plaintiff still fails to rebut the Army's showing of non-discriminatory intent by establishing that its proffered reasons for its employment actions were "mere pretext for unlawful discrimination." *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1155 (9th Cir.2010). Morris essentially repeats arguments that he previously made and which were previously rejected by the Court in its Feb. 4 Order. *See Wereb v. Maui County*, 830 F.Supp.2d 1026, 1031 (D.Haw.2011) ("Mere disagreement with a previous order is an insufficient basis for reconsideration.").

Plaintiff first argues that COL Margotta's statement that Plaintiff did not "take care of his employees" was not made in good faith because Morris produced letters of support from his co-workers and employees whom he supervised. (Pl.'s Mot. at 8.) Plaintiff further argues that COL Margotta chose to "disregard the letters [without] contacting anyone who wrote the letters" and "hinted that Plaintiff forced them to write letters which was untrue." (Pl.'s Reply at 8.) [13] However, as this Court found its Feb. 4 order, COL Margotta had several reasonable grounds for his statement. As pointed out by Defendant, COL Margotta concluded that refusing to provide additional support for his employees' performance appraisals did not constitute taking care of one's employees. Specifically, COL Margotta found "that [Morris's] refus[al] to go back and readjust the ratings ... resulted in his employees being downgraded on their ratings because the write ups did not justify the ratings that

---

**13.** The Court notes that Plaintiff's allegation that COL Margotta "hinted that Plaintiff forced [his employees] to write letters" does not include any citation as to the source of such allegation, and the Court has not found such a source in the record. In any event, even assuming COL Margotta made this statement, it would not change this Court's holding that Plaintiff failed to produce sufficient evidence establishing that the Army's reasons for its employment actions were pretextual.

[Morris] gave them." (Pl.'s CSF Ex. 12.) Additionally, COL Margotta was likely aware of statements made by other Army personnel indicating that Plaintiff's refusal to modify the performance appraisals was detrimental to his employees since such statements would presumably be in the record that COL Margotta reviewed prior to making his decision. For instance, Deputy Commander Bryson Jhung stated on December 3, 2007 that Plaintiff's "misconduct adversely affected their organization by [c]ompletely stopping the pay pool process and wasting the valuable man hours associated with [Plaintiff's] intentional, deliberate delay" and "affected the employees which represented the USAG–HI Pay Pool by delaying their ability to close out the board and return to their appointed places of duty." (Pl.'s CSF Ex. 14 at 3, ¶ 6.) Also, Deputy Commander Jhung and LTC Michael Wallace stated on December 13, 2007 that allowing Plaintiff to remain in his Supervisory Operations Officer position even though he refused to abide by his superiors' directives was not in the "best interest of this Organization" and its employees. (Def.'s CSF Ex. 2 at 2, ¶ 2.)

Although Plaintiff notes that Morris received several letters of support from his employees, the question is not whether COL Margotta's statement was *"objectively false,"* but rather whether he "honestly believed [his] reason for [his] actions, even if [his] reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir.2002) (emphasis in original). Here, Plaintiff has made no showing that COL Margotta did not act in good faith when he stated that Morris did not "take care of his employees." While Plaintiff points out that COL Margotta gave Morris a Commander's Award for Civilian Service; this does not controvert the fact that, among other serious concerns mentioned above, Morris "demonstrated [an] inability to follow su-

pervisory standards [which] negatively effected" his employees and "caus[ed] irreparable damage" to the trust placed in him by his commanding officers. (Def.'s CSF Ex. 2 at 2, ¶ 2.)

Next, Plaintiff renews his argument that the two supervisors who were responsible for originally transferring him to a non-supervisory position were no longer in his chain of command and, consequently, COL Margotta's statement that "there was nothing new[,] no factors to consider" was pretextual. (Pl.'s Mot. at 9.) However, as Defendant points out, the absence of Mr. Brown and Lieutenant Colonel Wallace did not provide any reason for the Army to change its position and rescind the settlement agreement. (Summary Judgment Order at 49.) As COL Margotta explained, "one of the things [Plaintiff] was asking for was essentially to go back into his old position, which would have meant for me as the commander to basically say that he did nothing wrong ... There was no new compelling evidence or anything that [Plaintiff] could bring to the table that would want me to go back on the agreement." (Feb. 4 Order at 36, n. 11). As such, Plaintiff continues to fail to establish that the Army's articulated reasons are pretextual "by showing that the employer's proffered explanation is unworthy of credence." *See Villiarimo,* 281 F.3d at 1062. Accordingly, Plaintiff does not meet his burden of showing that the Army's reasons for not rescinding the settlement agreement were pretextual.

In sum, Plaintiff does not set forth facts or law of a strongly convincing nature to induce this Court to reverse its prior finding that his decision to retire was voluntary or that he failed to produce sufficient evidence of pretext. *See Hele Ku KB,* 873 F.Supp.2d at 1289. Therefore, the Court DENIES Plaintiff's Motion for Reconsideration with respect to his ADEA claims.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Reconsideration and Relief from a Judgment or Order Dated February 4, 2014.

IT IS SO ORDERED.